## JAMES COUCH v. THE STATE.

See this case, for facts proved by the State, which constitute a *primâ facie* case of guilt, on an indictment for keeping a disorderly house.

Where the defendant is convicted on evidence which makes out a *primâ facie* case for the State, and the testimony offered for the defence does not rebut or explain away the inference of guilt, this court will not reverse the judgment, refusing a new trial.

APPEAL from Bexar. Tried below before the Hon. Thomas J. Devine.

This was an indictment found at the Fall Term, 1858, against John Earl and James Couch, for unlawfully keeping a house as a common resort for prostitutes and vagabonds, on the first day of September, 1858, in the county of Bexar. The defendant, Earl, was not on trial.

The following facts were proved by the State, to wit: about the time charged in the indictment, there were fandangoes held, about every other night, in the house adjoining the grocery kept by the defendants; at these fandangoes, the women were all prostitutes; indecent and obscene language was heard by the witnesses on these occasions; no decent woman attended such place. The defendants were the reputed proprietors of the house where the fandangoes were given. It was situated in Alamo Square, city of San Antonio, county of Bexar.

The defendant proved, that in December, 1857, he gave to Earl, a bill of sale for the grocery establishment, and that the

latter moved into the house with his stock of liquors, and was the proprietor of the premises. No bill of sale was produced, nor was any consideration proved to have passed. Couch, originally leased the place, where the fandangoes were held, from W. B. Knox; he built the house, and let Madame Candelario have it, and at that time the premises were held in the name of J. Humphries, the witness for the defence. Couch was barkeeper in the grocery establishment; Earl exercised control over it, when present. Couch did the business in the absence of Earl. Earl purchased the stock.

Madame Candelario testified, that she got the house from Earl about a month before she gave a fandango; that she got the house to sell coffee to the marketers; lived in the house with her family; paid no rent; gave fandangoes; that they were licensed by the city; Couch had nothing to do with the fandangoes; she was manager of, and received the entrance fees to the dance; and that there was a store, in the same building, between the dance-room and Earl's grocery.

The jury found the defendant guilty, and assessed his fine at $125, and judgment was rendered in accordance with it.

The defendant filed a motion for a new trial, on the ground, among others, that the verdict of the jury was contrary to the law, and the evidence in the case; this motion was overruled. One of the grounds of error assigned by the defendant, on this appeal was, that the court erred in not granting a new trial, for the reasons set forth in his motion.

*Hancock & West*, for the appellant.—It is plain, that the statute is aimed, not at the proprietors, landlords or owners of the house, which may be rendered disorderly by the presence of the obnoxious characters alluded to in the Code, but at those, in its own language, who "keep" these disorderly houses. In this case, the State contented itself, and, indeed, did prove no more than that the defendant was the reputed proprietor of the establishment; they did not pretend that the defendant kept the house, or that he was ever present, or had any knowledge of the

illegal proceedings going on there. Knox owned the property. The defendant leased the property from Knox, and then, under some contract (what, is wholly immaterial,) abandoned the control of the premises to Madame Candelario, who, having obtained a license from the city fathers; living in the house, gave the fandangoes and received the pay for them; and the defendant had nothing to do with them.

It is plain, that Madame Candelario, and not the defendant, kept the house, and it is a matter of no consequence whether she paid the rent, or had the property gratuitously. It is sufficient, that she had the control, and not the defendant. The defendant is not indicted for conniving at and allowing her to keep the house, but for keeping it himself; and the only question is, not, does the evidence show the defendant to have been the *real owner or proprietor*, but does it show that he kept the house, or that Madame Candelario kept it? Her testimony is uncontradicted, and it is clear, from it, that she kept the house.

At this term, in the case of Robinson v. The State, (*supra*, 152,) it was held substantially, that it is not sufficient that the party be the proprietor, but it must appear that he had the control of the premises also.

*Attorney-General*, for the appellee.

ROBERTS, J.—The State made out a *primâ facie* case, by evidence, to which the defendant made no objection. The defendant seems to have relied upon rebutting it, by proving the existence of such a state of facts, as would show that he had no real connexion with the transaction, and thereby relieve himself from the apparent connexion. The evidence adduced by him for this purpose, is obscure, meagre, and contradictory. The jury were authorized to conclude, that the *primâ facie* case made against him by the State, was not rebutted or explained away. We do not see any clear ground for concluding that they were wrong in their conclusion. Judgment is affirmed.

Judgment affirmed.