## THOMAS BILLARD v. THE STATE.

In an indictment for larceny, the rule is, that "where one person has the general and another a special property in the thing, the property may be averred in the indictment in either." (Paschal's Dig., Note 683.)

In criminal cases, the evidence must be such as to satisfy the jury, beyond a rational doubt, that the prisoner is guilty of the charge alleged against him in the indictment, or it is their duty to acquit. Such doubt should be actual and substantial, not mere possibility or speculation. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say that they feel an abiding conviction to a moral certainty of the charge.

In all criminal cases whatsoever, it is essential to a verdict of condemnation that the guilt of the accused should be fully proved; that neither a mere preponderance of evidence, nor any weight of preponderant evidence, is sufficient for the purpose, unless it generate full belief of the fact to the exclusion of all reasonable doubt.

---

---

In civil cases, the jury will weigh the testimony, and, after striking a fair balance, decide accordingly; but in criminal cases the testimony must be such as to satisfy the jury beyond a rational doubt that the prisoner is guilty of the charge alleged against him in the indictment, or it will be their duty to acquit.

In civil cases, it is the duty of the jury to weigh the evidence carefully, and to find for the party in whose favor the evidence preponderates, although it be not free from reasonable doubt; but in criminal trials, the party accused is entitled to the benefit of the legal presumption in favor of innocence, which, in doubtful cases is always sufficient to turn the scale in his favor. It is therefore a rule of criminal law, that the guilt of the accused must be fully proved.

If the accused took the property under mistake, mere negligence, by which the property was lost, will not establish felonious intent, however liable the party may be for damages.

Article 745 of the Penal Code defines theft as follows: "Theft is the fraudulent taking of corporeal personal property belonging to another from his possession, or from the possession of some person holding the same for him, without his consent, with intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking." (Paschal's Dig., Art. 2381, Note 683.) The felonious intent is an essential ingredient in the crime of theft, and such intent must exist at the time of taking; for no subsequent felonious intention will render the previous taking felony.

Where at a camp-meeting the owner of a Mexican blanket had dropped it at the foot of a tree, and rode away, forgetting it, and the blanket was afterwards found by M, who hung it on the railing of the altar, saying he had found it, and asked a by-stander to try and find the owner, and the accused afterwards took the blanket off the railing, saying "it is mine," and threw it about his person, and walked about with it, and next day he and several others were seen sitting upon it, and calling it "the stray blanket," and threatening to play poker for it; but for the defense it was proved that the accused had a blanket of his own not unlike the lost one, (they were both Mexican blankets;) and the prisoner was shown not to have carried the lost blanket away from the camp-ground with him, it was *held*, that there was no sufficient proof of felonious intent of theft, and the verdict of the jury, finding the accused guilty, was set aside, and a new trial ordered. (Paschal's Dig., Arts. 2381, 2384, Note 683.)

APPEAL from Johnson. The case was tried before Hon. JOHN J. GOOD, one of the district judges.

The appellant was indicted for stealing a Mexican blanket from the possession of William Manley, who was holding it for William Ramsey, the owner thereof.

As the charge of the court defined theft in the language of the statute, and as to the evidence it was substantially correct, though quite as strong against the prisoner as an impartial administration of the law would allow, the case was treated by the court as a fact case.   The place *where* the unfortunate occurrence took place is a fact which of itself may have produced a bias not visible in the record.

It is thought by the *Reporter* that the analysis of the facts by the learned judge who rendered the opinion of the court is a sufficient statement of the case.

The jury found the defendant guilty, and assessed his punishment at two years' imprisonment in the penitentiary.

The defendant moved for a new trial, and filed some affidavits of cumulative evidence in his defense.   The motion was overruled, and he appealed.

No briefs have been furnished to the *Reporter.*

DONLEY, J.—It is sufficient to allege the property to be in the owner, without any allegation as to the actual possession.   "The rule is, that where one person has the general and another a special property in the thing, the property may be averred in the indictment to be in either." (Longford v. The State, 8 Tex., 116; Whart. Amer. Crim. Law, 567.)  ·

The ownership was sufficiently alleged without averring that the property was in the actual possession of W. C. Manley, who, it is alleged, was holding the same for the use of William Ramsey, the owner.   It is not perceived how this can vitiate the indictment, it being alleged that the property was fraudulently taken, without the consent of the owner, and also without the consent of the said W. C. Manley, with the intent to deprive the owner of the value of the property and appropriate it to the use of ap-

xxx—24

pellant.   The exceptions to the indictment were properly overruled.

It is, however, believed that the evidence does not show with sufficient certainty a fraudulent and felonious taking to warrant a conviction for felony.

The blanket was taken by the appellant from the railing where it was placed by the witness, Manley, without concealing or attempting to conceal the act.   The appellant, at the time of taking, said the blanket was his.   The evidence shows that appellant took a blanket with him to the meeting ground before the time he is shown to have taken the blanket from the railing where it was placed by the witness, Manley.   It is further shown, that the blanket of the appellant and the blanket alleged to have been stolen were striped Mexican blankets.   The blanket of the appellant is described as a "striped common Mexican blanket."   The blanket alleged to have been taken by the defendant is described as being "a fine Mexican blanket, striped with black and red cochineal stripes about one inch broad."   The impression created by the evidence is, that the blanket alleged to have been taken was a finer blanket than that of the defendant; but it does not appear, from the testimony in the cause, that at the time the appellant took the blanket he must have noticed at once that it was not his own.

There can be no question, that if the appellant, at the time of taking the blanket, knew it was not his property, and being aware of the fact he took the blanket, with the fraudulent and felonious intent to deprive the owner of the property and appropriate it to his, the appellant's, use, he was guilty of theft.   The manner of taking the property being without any attempt at concealment, but publicly before witnesses, certainly cannot excuse, or in any manner lessen the offense, if the property was taken with a fraudulent intent.   The manner and circumstances under which the property was taken, held, used, and spoken of, by the appellant, are circumstances proper to be consid-

ered in determining with what intent the property was taken. The open public manner in which it was taken, the fact that there was no attempt at concealment, are circumstances in favor of the appellant. It almost surpasses belief that an individual, having capacity to commit crime, should, in the presence of a number of witnesses, have taken this blanket, knowing at the time that it was not his, and that he should wear it upon the ground where there were many persons, when, if he was conscious of having taken the property of another, and was capable of reflecting upon the act he had done, he must have been aware that his acts invited detection.

It does not appear from the testimony how long he continued to wear or had possession of the blanket. On the day after the appellant took possession of it, he and others are found sitting upon a blanket. It does not certainly appear that this was the blanket alleged to have been stolen, nor does it appear by whom it was taken, or the place where persons are found sitting upon it. The evidence shows that when the appellant left that place other persons remained sitting on the blanket. After this there is no testimony connecting the appellant with the blanket, except the witness Hiner. He says that " on Monday he saw defendant with a blanket that he supposed was Ramsey's blanket; that he saw the defendant take the blanket off with him when he left the camp-ground."

The weight of testimony is, that appellant did not take the blanket that is alleged to have been stolen from the camp-ground. Dickey, a witness for the defendant, says he saw the defendant as he was going to the camp-ground and as he was returning, and on those occasions he had with him a Mexican blanket, which was exhibited to and recognized by the witness, at the time of the trial, as the same he had seen the appellant have when passing to and from the camp-ground. This was not the blanket that had belonged to William Ramsey. James Strow says that he

watched the defendant when he left the camp-ground, to see if he took the blanket off with him; that he did not; that defendant had his blanket thrown across his saddle, and witness thought he could not have taken the blanket alleged to have been stolen. Turpin, as well as the other witnesses, had had his attention called to the blanket alleged to have been stolen; that appellant asked witness to go home with him when leaving on Monday evening, and did not take the blanket off with him. From all the evidence, the weight of testimony is against the appellant having taken the blanket from the camp-ground. The witness Hiner does not speak of the appellant taking more than one blanket, and as the other testimony does show that he took his own blanket, which was exhibited to the jury on the trial, if the witness Hiner might be mistaken as to the blanket that was taken off by the appellant, it is a circumstance showing that there was a resemblance between the blanket of appellant and the blanket alleged to have been stolen, and that appellant may have first taken the blanket believing it to be his property. If he took it under such circumstances, having, from the resemblance, good reason to believe that it was his property, he cannot be guilty of a crime if he was honestly mistaken.

And the law will not indulge any presumption against the innocence of the defendant. If, on all the testimony, there is a reasonable doubt as to his guilt, he is entitled to the benefit of the doubt, and cannot on such testimony be convicted.

In criminal cases the evidence must be such "as to satisfy the jury beyond a rational doubt that the prisoner is guilty of the charge alleged against him in the indictment, or it is their duty to acquit. * * * Such doubt should be actual and substantial, not mere possibility or speculation. * * * It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say that

they feel an abiding conviction to a moral certainty of the charge." (Whart. Crim. Law, § 707.)

In Miller v. The State, 4 Black., 552, it is held: "That in all criminal cases whatsoever it is essential to a verdict of condemnation that the guilt of the accused should be fully proved; that neither a mere preponderance of evidence, nor any weight of preponderant evidence, is sufficient for the purpose, unless it generate full belief of the fact to the exclusion of all reasonable doubt."

"In civil cases the jury weigh the testimony, and, after striking a fair balance, decree accordingly. But in criminal cases the testimony must be such as to satisfy the jury beyond a rational doubt that the prisoner is guilty of the charge alleged against him in the indictment, or it will be their duty to acquit." (Whart. Crim. Law, § 707.)

"In civil cases it is the duty of the jury to weigh the evidence carefully, and to find for the party in whose favor the evidence preponderates, although it be not free from reasonable doubt. But in criminal trials the party accused is entitled to the legal benefit of the legal presumption in favor of innocence, which, in doubtful cases, is always sufficient to turn the scale in his favor. It is, therefore, a rule of criminal law, that the guilt of the accused must be fully proved." (3 Greenl. on Ev., § 29.)

It certainly was the duty of the appellant, if he took the blanket under the belief that it was his property, to have returned it to the place and custody from which he obtained it, or to have so secured it that it might be restored to the owner, if having taken it under the impression that it was his property. On discovering his mistake, it then being in his possession, he kept it so negligently as that it is lost, he may, by his acts and negligence, be made to pay the owner damages; but it cannot be held that a party can be guilty of the crime of theft by negligence, and without intending to defraud another of any right.

Theft is the fraudulent taking of corporeal personal

property belonging to another from his possession, or from the possession of some person holding the same for him, without his consent, with the intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking. (Crim. Code, Art. 745,) [Paschal's Dig., Art. 2381, Note 683.]

There must be a felonious intent in taking the property to constitute the crime of theft. (3 Greenl. on Ev., § 150.)

In Dignowitty v. The State, 17 Tex., 527, it is said, the felonious intent is an essential ingredient in the crime of larceny, and it must exist at the time of taking, for no subsequent felonious intention will render the previous taking felonious.

The innocence of the defendant is consistent with all the facts in evidence in this case. If, after taking the blanket from the place it was deposited by the witness Manley, he returned it to the place from which he had taken it, and it was afterwards taken away by some other person, the appellant could not be guilty of theft, for the want of any fraudulent or illegal intent. He could not be guilty of theft, without intending to deprive the owner of his property. (Code of Crim. Pro., Arts. 745, 748.) And, as has been said, if the testimony leave in doubt the intent with which the property was taken, the defendant is entitled to the benefit of that doubt, and should be acquitted.

The judgment is reversed, and the cause

REMANDED.