A. ETHINGTON v. THE STATE.

1. Though appellate courts have revisory jurisdiction in relation to the facts of criminal causes brought before them, yet it is not incumbent upon them to assume the functions of petit juries, and by scanning and weighing the evidence, imperfectly disclosed by the transcript, to determine whether the defendant was or was not guilty.

2. The rule that to warrant a conviction in a criminal cause, the evidence must exclude every hypothesis other than that of guilt, is not applicable to appellate courts.

3. When there has been a verdict of guilty in a criminal case, and the court below has refused to set it aside and grant a new trial, the defendant, on his appeal to this court, must not only show that the verdict was wrong, but must make it manifest that the court below erred in refusing a new trial.

4. The case of Cox v. The State, 32 Texas, 610, cited, and the rule therein approved, to the effect that the errors of juries must be most palpable and apparent to justify this court in awarding new trials by reversing the judgments of the district courts.

APPEAL from Fayette.   Tried below before the Hon. I. B. McFarland.

The general character and leading features of this case are indicated in the opinion of the court.   A detail of the evidence is unnecessary, in view of the questions decided.

Able and elaborate arguments were filed by the counsel in this case, but they deal mostly with the evidence and the facts.

*J. R. Burns* and *E. Higby*, for the appellant.

*W. Alexander, Attorney General,* for the State.

OGDEN, J.—This cause was decided at the last term of this court, affirming the judgment of the lower court. A motion for a rehearing was sustained, and the case is now again submitted upon additional briefs.

In the several briefs filed before and since the granting of a rehearing, the counsel claim that the judgment in this case should be reversed because of the error of the court in overruling the motion for a new trial, for the reason that the verdict and judgment were contrary to the evidence adduced on the trial of the cause.   And it is contended, in effect, that this court in criminal cases should assume the functions of the petit jury, and scan and weigh the evidence for and against the defend-

ant, and from the necessarily imperfect record of the evidence, determine the question of fact whether the defendant is guilty or not guilty.

And as a rule to govern the action of this court, it is said that, "to warrant a conviction the evidence must exclude every other hypothesis but that of the guilt of the defendant," or in case of conviction the judgment should be reversed, and we are referred to the cases of Orr v. The State, 34 Ga., 345, and Billard v. The State, 30 Texas, 367, as authority in establishing the above rule.  In the first case cited, the learned court refers to rules established by Starkie, Greenleaf and others, for the government of juries and lower courts, in trying a defendant charged with an offense; and when applied to the proper court, we fully recognize the wisdom and justice of the rule.  But when applied to an appellate court, where but an imperfect statement of the facts proven are incorporated in the transcript, and where the court has no opportunity of seeing the witnesses, or of hearing them testify, and is therefore almost wholly deprived of the privilege or power of judging of the intelligence and truthfulness, the biases and prejudices, and consequently the credibility of the witnesses, we fail to discover the wisdom, justice or policy of such an application; and we doubt not that the learned authors referred to would condemn the extension of such a rule to an appellate court, as it would in effect work the subversion of the right of a trial by jury, and ultimately the administration of justice.

That the appellate courts have a revisory jurisdiction over criminal matters, even in relation to the facts of the case, cannot be denied; and, therefore, whenever it appears from the record that a judgment is without foundation in fact, that judgment should be reversed. But when the facts of a case have been submitted to a

jury, and they have found an honest and intelligible verdict, that verdict should form the basis of the judgment of the court, unless the same should appear to the court trying the case, to be contrary to law and the facts proved. It is true the lower court has, and ought to have, great discretionary power to set aside a judgment, whenever in the opinion of that court impartial justice has not been done. But when that court, in the exercise of its discretionary power, has refused to disturb the verdict of the jury, and the case has been brought to an appellate court, we think it should then be made to appear, not only that the jury had erred in its verdict, but also that the court had erred in refusing a new trial. Article 3058, Paschal's Digest, provides, "The jury are the exclusive judges of the facts in every criminal case ;" and in the case of Heber v. The State, 7 Texas, 71, this court, in the construction of the above statute, upon the refusal of the lower court to grant a new trial, says : "It may well be doubted whether in criminal cases any other questions can be revised than those of law, contradistinguished from those of fact ;" and in the same opinion the court intimates most clearly that, when there was conflicting testimony, and a new trial was refused, this court would not reverse the judgment because the same was against the weight of evidence. In the case of Killingsworth v. The State, in 23 Texas, 209, the court says : "Whether the defendant below was guilty or not, and to what extent he was guilty, if at all, were questions for the jury." And a similar rule was followed in Gouch v. The State, 24 Texas, 557 ; Ross v. The State, 24 Texas, 501.

And in the case of Cox v. The State, 32 Texas, 610, the court has fully determined the question under consideration, and says : "But it was the province of the jury alone to weigh the testimony of witnesses, and be-

lieve the one, and disbelieve the others.   Unlike the judge who presides over trials, this court does not have, nor can it be put in possession of, the same facilities for judging of the propriety of granting new trials.   The errors of juries must be most palpable and apparent to justify this court in awarding them by a reversal of the judgment of the court below.''   We think the rule there established a correct one, and we are unwilling to attempt to make one conflicting.

The facts proven in this case appear to be somewhat conflicting, but we think all the material facts sworn to by all the witnesses may be made substantially to harmonize.   One witness proved that he saw defendant riding the stolen gelding early in the morning after he was stolen ; and another witness proved that, on the day after the animal was stolen, defendant told him that he, defendant, had traded the stolen animal to one Prince for a pony.   On the other hand it was proven, by several of defendant's witnesses, that Prince had the animal in possession soon after the theft, and that he rode the animal off into Eastern or Northern Texas. It was also proven that Prince and defendant were, on the day after the theft, riding in company ; and, if all the testimony be true, they must have alternated in riding the stolen animal, apparently knowing each other's business and purposes, and swapping horses with each other ; and it was also proven, that on the night the animal was stolen, Prince came to defendant's house, after he had gone to bed, ostensibly to trade horses.   All this, and other corroborating testimony, was given on the trial, without impeachment, and under these facts there can be no doubt that the jury were authorized in finding the defendant guilty.

The proof that Prince was riding the animal soon

9—XXXV

after the theft was no proof that defendant did not ride him ; and the proof that defendant traded to Prince a black pony was no proof that he did not also trade him the stolen one ; and it may not be impossible that the jury attempted to reconcile the whole testimony on the hypothesis that both Prince and defendant stole the animal together, or rather that both concerted, consented and plotted together to commit the theft, and then, by agreement, were to share the profits. Under this hypothesis, and this alone, could all, or nearly all, the testimony be made to harmonize, and be in strict accordance with truth, and the charge in the indictment.

It is hardly necessary to say that if such were the facts of this case, then both Prince and the defendant were guilty, and in that case the verdict of the jury would be in strict accordance with law and justice. This was the opinion we arrived at after a careful study of the record, at the last term of this court; and a re-examination of the case now, with the authorities referred to by counsel, has only confirmed our opinion. The other questions raised by the assignment are correctly disposed of in the former opinion in this case, and we need not notice them further now. The judgment of the district court is in all things affirmed.

AFFIRMED.