SARAH A. L. NORWOOD, ADM'X, AND OTHERS v. S. S. COBB,
ADMINISTRATOR.

1. A surety on a bond given on an appeal to this court having died pending
the appeal, the appellee suggested that fact, and that certain named
persons were the widow and children, and as such the heirs, of the de-
ceased surety, and prayed that *scire facias* issue to them from this
court, to make them parties.    On the return of the *scire facias*, there
being no appearance for the heirs of the deceased surety, nor for any of
the appellants, the judgment appealed from was, on motion of the ap-
pellee, affirmed against the surviving appellants and the heirs of the
deceased surety.    This affirmance was set aside at the next term of the
court, on appellants showing that when it was rendered the principal ap-
pellant was dead ; and thereupon the heirs of the deceased surety ap-
peared to the *scire facias*, and moved that it be quashed, because of
want of jurisdiction in this court to try the issues of fact involved

therein, and because the mere allegation that they were the heirs of the deceased surety, without averment that they had inherited property from him, could not, though confessed, warrant any judgment against them; and they also filed a sworn answer to the *scire facias*, alleging that no estate had descended to them from the deceased surety. The appellee, opposing the motion to quash, filed an affidavit to the effect that the affiant, some time previous to the death of the surety, heard him say that he had given to his children money and property amounting, according to affiant's impression, to five thousand dollars, to each of them. *Held*, that the motion to quash the *scire facias* to the deceased surety's heirs must be sustained, but, on account of their default, they must be taxed with all costs of the *scire facias*. *Held further*, that the showing made by the appellee, to charge the heirs of the deceased surety with assets derived from him, is wholly insufficient, because it fixes neither amounts nor dates; and if any advancements were made by the surety to his children, such advancements could not render the latter legally liable for any obligation incurred by their father subsequent to the advancements.

2. Suit was originally brought against the administratrix and the children of one N., to annul certain conveyances of slaves made by N. to his children, and to subject the slaves to payment of a decree rendered against N. by a chancery court of Mississippi, for the slaves or their appraised value. Subsequently the petition was amended, and the defendants charged with a conversion or a wrongful detention of the slaves, with prayer for the specific recovery of the slaves, or for their value as fixed by the decree. Answers were filed, denying the conversion or detention of the slaves. The court below instructed the jury to find for the plaintiff the amount of the decree with interest, if they believed from the evidence that N. had been served with process in the Mississippi suit. *Held*, that the instruction was erroneous. The defendants cannot be made liable unless they were guilty of a conversion or a wrongful detention of the slaves, or had received assets from the estate of N. If they had received such assets, they were not liable *in solido* for the amount of the decree, but severally for such amounts as they respectively received; and if guilty of a conversion, the measure of damages was not the amount of the decree, to which they were not parties, but the value of the slaves at the time of the conversion.

APPEAL from Gonzales. Tried below before the Hon. Fielding Jones.

The present is the fifth appearance of this veteran case in the Supreme Court. The former appeals are reported in 11 Texas, 556; 15 Texas, 500; 20 Texas, 588; and 24 Texas, 551;

and to these reports reference is made for the facts of the case, including the pleadings of the parties and the former rulings of this court.

The judgment now appealed from was rendered at the April term, 1861, of the District Court of Gonzales county, when, in conformity with the instructions given to the jury, verdict and judgment were rendered against the defendants for the amount of the Mississippi decree and interest thereon. In the opinion of this court will be found so much of the instructions given to the jury as related to the liability of the defendants.

On the appeal bond given by the defendants, one of the sureties was W. W. Paramore, who died pending the appeal. The efforts made by the appellee to make his heirs liable by process of this court are disclosed in the opinion.

*T. M. Harwood,* and *A. M. Jackson,* for the appellants.

*Parker & Miller,* and *E. M. Pease,* for the appellee.

WALKER, J.   This case has been before this court four times, and is reported in 11, 15, 20, and 24 Texas.   The present record was filed in this court on the 5th of November, 1861. During the long period of the war, and the consequent derangement of all public business, the case slept upon the files of the court.   No action was taken in the case until the 17th day of August, 1870, when a writ of *scire facias* was issued to Rebecca J. Paramore, James H. Paramore, Hugh Lewis and his wife, Sue Lewis, the heirs at law of W. W. Paramore, deceased, who was one of the sureties on the appeal bond.   The writ was returnable on the first Monday in December, 1870. Due service was made on all the parties.   When the case was reached in its order, on the 29th of March, 1871, the appellants having failed to appear in any manner, the appellee's counsel moved for an affirmance of the judgment without reference to merits.   The motion was granted.   At the following term of

the court, the appellants moved to set aside the judgment, for the reason that the administratrix of George Norwood's estate, who was one of the appellants, had died before the rendition of the judgment. It is claimed by the appellee that by reason of their default, the appellants are not now entitled to be heard on the merits of the case; that the judgment should have stood as rendered against the living appellants, and the case should only now be heard so far as it affects Sarah A. L. Norwood's representatives. We do not entirely adopt this view of the case; but it is considered by the court that the appellants should be put upon terms, and in any event pay the costs occasioned by their default.

We now turn to the answer of the heirs of W. W. Paramore to the *scire facias*, and the replication. The answer denies that the respondents have received any property or money from the estate of W. W. Paramore, and the replication, though sworn to by James D. Anderson, is a totally insufficient reply to the answer. Anderson swears that sometime previous to the death of W. W. Paramore, probably in the year 1863 or 1864, in a conversation with Paramore, he said that he had given Hugh Lewis, his son-in-law, " a sum of " money," and his son James " an amount in cattle," but what sum of money or what amount in cattle, or when given, is not stated. Anderson further says that it was his impression, from what Paramore said, that he had given each of his children a sum equal to five thousand dollars. There is no proof as to when these sums were given, if at all; but if they were given, and received by the children of Paramore, as advances, this created nothing more than an honorable obligation to pay a debt contracted after the advancement. The motion of Rebecca J. Paramore, James H. Paramore, and Sue Lewis, to dismiss the *scire facias*, must be granted.

The appellants insist upon several errors assigned in the record. The suit was originally brought on a decree of the Vice Chancellor of the State of Mississippi. Many errors have been committed in the subsequent progress of the case.

Indeed, this court appears, fifteen years ago, to have been wearied with the correction of errors in this case, and at the conclusion of the opinion of C. J. Wheeler, 24 Texas, 557, he says : " It is to be regretted that we cannot put an end to a " litigation which has been so protracted. But we know of " no principle which would warrant us in refusing to revise ' " an erroneous ruling, because it had been repeated in the same " case." .

To get an idea of what is before us in this case, we will notice that the original petition was in the nature of a bill to set aside and cancel certain conveyances of Isham and Adeline, two slaves, which George Norwood, deceased, had made to his wife and children ; and to subject the slaves to the payment of the original decree of the Vice Chancellor of Mississippi.

The amended petition of October 7th, 1856, changed the nature of the suit, and sought to charge the defendants as in an action of trover for a wrongful conversion of the negroes. The petition prayed a specific recovery of the negroes, if within the power of the court, and damages for their hire; but if the negroes could not be given to them, there was a prayer of judgment for their value as fixed in the decree of the Vice Chancellor, and the value of hire. Answers were filed denying the conversion or wrongful detention of the negroes.

And now, as to the first error assigned, the charge of the court was clearly erroneous. The jury were directed to find against the defendants the amount of the Mississippi decree. No charge was given as to the necessity of first finding a wrongful conversion or detention of the negroes. The only inquiry to which the mind of the jury is herein directed is as to the service of process on George Norwood in the State of Mississippi, and it seems to have been taken for granted that if George Norwood were served with the process of the court, full faith and verity must be given to the decree, and his heirs must pay the debt, whether they received one cent from his estate or not.

10

We may now lay down the principle which should govern this case. Unless the heirs of George Norwood are guilty of the wrongful detention or conversion of the slaves, Isham and Adeline, then they can only be made liable for the payment of the Mississippi decree, on its being shown that they have received assets in money or property from the estate of George Norwood, equal to the amount of the debt; and then, a judgment against them *in solido*, may be erroneous. They should be made to pay in proportion to the amount they have received; but it may be further proper to remark, that if, on a proper state of pleadings and evidence, the jury had found the defendants guilty of a wrongful conversion or detention of the negroes, the measure of damages could not be the dollars and cents of the Mississippi decree. The rule of damages would be the value of the property at the time of conversion.

The fifth assignment of errors is also well taken, for the reasons assigned, and we may say the same of the sixth, seventh, and eighth.

The judgment of the District Court must be reversed and the cause remanded.

Reversed and remanded.