# HIRAM PHELPS *et al.*

*v.*

# THE PEOPLE OF THE STATE OF ILLINOIS.

1. LARCENY—*by a bailee.* To constitute the crime of larceny, a felonious intention is an indispensable ingredient. And under the statute making the conversion of goods and chattels by a bailee of them larceny, in the same manner as if the original taking had been felonious, the crime is not made to consist in the ·mere conversion of the property to his own use by the bailee, but in such conversion with an intent to steal the same.

2. Upon the trial of a party charged with the larceny of a lot of cattle, which, before and at the time of the commission of the alleged crime, were in the defendant's custody, an instruction which made the guilt or innocence of the defendant, in case the jury found that he had converted the cattle to his own use, depend upon whether he was at the time a part owner of the cattle, was *held* to be erroneous, for, although he might not have been a part owner, yet if he drove away and converted the cattle to his own use, under an honest belief that he was such part owner, the crime of larceny could no more be imputed to him than if he had actually owned the cattle in part.

WRIT OF ERROR to the Circuit Court of Iroquois county; the Hon. CHARLES H. WOOD, Judge, presiding.

The opinion states the case.

Messrs. FISHER, HOLLAND, CLARK & BAKER, for the plaintiffs in error.

Mr. WASHINGTON BUSHNELL, Attorney General, for the people.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an indictment against the plaintiffs in error and Hiram R. Phelps, their father, for the larceny of forty steers, under which the plaintiffs in error were convicted, at the March term, A. D. 1870, of the Iroquois county circuit court.

At the time of the alleged larceny, on the fourteenth day of October, 1869, there existed the following contract in writing between Richard Amerman, in whom the property was laid in the indictment, and Hiram R. Phelps, to-wit:

"*Articles of Agreement, made and entered into by and between Richard Amerman and Hiram R. Phelps, both of Ashgrove township, Iroquois county, Illinois:*

*Witnesseth:* The said Amerman, of the first part, has sold to the said Phelps, of the second part, a half interest in his cattle, consisting of eighty-one head, and weighing 92,998 pounds, the whole value being five and a half cents per pound, amounting to $5114.89. It is agreed that the parties shall both be at equal expense in the costs of feeding, and labor in attending them; the said Amerman to take charge of the cattle and stall feed them this winter, and sell them at such times as the parties may agree; provided, that they shall not be kept longer than the first of February, 1870; the said Phelps agrees to furnish all his corn at the rate of forty cents per bushel, cut up or gathered. He also agrees to pay interest to the said Amerman, on half the above value of the cattle, at the rate of ten per cent, upon the sale of the cattle. It is agreed that the aforesaid value of the cattle, $5114.89, together with the interest due said Amerman from Phelps, shall be paid first, next the costs

of the feed and expenses shall be paid, any balance remaining shall be equally divided between the said Amerman and Phelps.

"In witness whereof, we have hereunto set our hands and seals, this twenty-eighth day of September, A. D. 1869.

"RICHARD AMERMAN, [*Seal.*]

"HIRAM R. PHELPS, [*Seal.*]

From the time of the making of the contract until the thirteenth day of October following, one of Phelps' boys assisted in taking care of, and herding the cattle. On that day Amerman went to the State of Indiana, and the cattle were taken by a boy of his and one of Phelps' to the place of one Keath, where Amerman and Phelps had engaged pasture for the cattle, and while they were there, the boy of Phelps was alone to attend to and take care of them, and Phelps was to furnish a pound to keep them in at night.

The evidence on the trial tended to show that about sunrise on the morning of the following day, the fourteenth of October, Hiram R. Phelps, the father, and his two sons, the plaintiffs in error, were seen driving forty of the best of the cattle towards Ashkum, a station on the Illinois Central Railroad, and that on that day the said Hiram R. Phelps shipped them at that place, giving his name as Wells; that subsequently he did not disclose this to Amerman, but told him the cattle had got out.

The defendants' counsel asked the court to give the following instruction to the jury, without that portion of it which is *italicised,* which the court refused to give, but modified the same, by adding to it the words which are *italicised,* and gave the same as thus modified, to the jury, to which exception was taken:

"18. If the jury believe from the evidence, that Richard Amerman and Hiram R. Phelps were partners in the ownership of the forty head of cattle, alleged to have been stolen, then, although they may further believe from the evidence, that

said Phelps drove away and converted the same to his own use, such conversion would not be larceny, even though they believed from the evidence that at the time said Phelps became such partner that he intended to cheat and defraud said Amerman, *but the law is otherwise, if you find from the whole contract that only an interest in the profits to be derived from the cattle passed to Phelps.*"

This instruction declared the law to be, that if, under the contract, only an interest in the profits to be derived from the cattle passed to Phelps, the conversion of them by him was larceny.

The simple conversion of the cattle, under such circumstances, might have been a civil wrong, but would not have amounted to the crime of larceny. To constitute that crime, a felonious intention is an indispensable ingredient. Under our statute making the conversion of goods and chattels by a bailee of them, larceny, in the same manner as if the original taking had been felonious, the crime is not made to consist in the mere conversion of the property to his own use, by the bailee, but in such conversion with an intent to steal the same.

The instruction made the guilt or innocence of Hiram R. Phelps, in case he converted the cattle to his own use, to depend upon whether he was a part owner or not of the cattle.

Although he might not have been a part owner, yet if he drove away and converted the cattle to his own use, under an honest belief that he was such part owner, under the contract in evidence, the crime of larceny could no more have been imputed to him, than if he actually had owned the cattle in part.

The evidence fairly presented before the jury the question, whether the one-half of the cattle embraced in the contract were not driven away and disposed of by Hiram R. Phelps, under an honest belief of a right to do so, or at least that he had a part ownership in the cattle, and the defendants were

entitled to have that question freely considered and passed upon by the jury, untrammeled by this instruction, which virtually excluded it from their consideration.

For error in giving this instruction, the judgment is reversed and the cause remanded.

*Judgment reversed.*