HENRY JOHNSON V. THE STATE.

1. In order to constitute the crime of larceny, the taking of the property must be with the felonious intent of permanently depriving the owner of his property.

2. See this case for evidence held to be insufficient to establish a felonious intent.

APPEAL from Hays. Tried below before the Hon. J. P. Richardson.

The opinion of the court sufficiently states the facts of the case.

*James H. Burts*, for appellant.

*William Alexander, Attorney-General*, for the State.

WALKER, J.   The appellant has been twice tried upon an indictment charging him with feloniously stealing a roan gelding, the property of some unknown person.   He has been twice convicted, and each time sentenced to five years in the penitentiary.

The evidence establishes the fact that the horse alleged to have been stolen had been running upon the range in Hays county for a number of years, during which time people were in the habit of catching him and riding him for temporary purposes.

About the latter part of February, 1872, the defendant, in company with three others, were hunting beeves near a place called Pitt's Pond, in Hays county, where the horse was seen grazing, when Johnson remarked that he would catch the horse and ride him awhile, that he had as much right to ride him as other people; whereupon Jim Carson, one of the party, roped the horse for the defendant, and he mounted and rode him off.

Johnson was then in the employ of Henry Bittick; Bittick was a butcher living in San Marcos, and the beeves which they were hunting were for his use.

Some jocular remarks were made between Bittick and Johnson at the time the horse was taken up, Bittick telling Johnson that he had better take care or he might get himself into the penitentiary, and Johnson replying, that it was a great ways to the penitentiary, and that it would take smarter men than were in Hays county to send him to the penitentiary for taking up and riding the old stray pony.

But it appears from the evidence that Johnson rode the pony to San Marcos, and there turned him into a lot; afterwards he told Bittick that he had traded the horse to Clay Ernest; Bittick again admonished him that he might get into trouble, to which he replied, we have traded in such a way that we can untrade again.

It seems further from the evidence that Ernest had the roan horse in his possession for some time, and that the defendant subsequently traded off the horse which he got from Ernest to

a third party, giving six dollars boot money, and afterwards sold the horse he got on the second trade for thirty dollars, to the same man, Clay Ernest.

In a recent English case, Mr. Baron Park defined the term "felonious" to be an act where there is no color of right or excuse for it. (Regina *v.* Holloway, 2 Carr & K., 942.) In larceny, the taking must be with a felonious intent to deprive the owner, not temporarily, but permanently, of his property.

At the time of the trial the old pony was back on the range running at large. In order to determine whether the defendant is guilty of larceny or not, we must look to the *quo animo* of the taking. He could not have intended to deprive the owner of his property. No owner of the horse was known to be in existence. The horse had run for years at large upon the range without an owner, and different persons had used him at pleasure. To make the case one of larceny, it must be shown that, at the time of taking, Johnson had formed the felonious intention. This the evidence does not show ; if the taking the horse had been felonious, Carson, who roped the animal for the defendant, and Bittick and Baker, who were also present, were all *particeps criminis,* but the evidence leads to no such legal conclusion.

The verdict of the jury is unsupported by and contrary to law.

The judgment of the District Court is therefore reversed and the cause dismissed.

                                   Reversed and dismissed.