GEORGE BLACKBURN v. THE STATE.

1. THEFT—OWNERSHIP.—If a person has taken actual control and is
in full possession of a horse so as to be responsible to the true owner
for the disposition of it, and the horse is taken out of his possession
by one having no right or authority, it is a trespass against the tem-

porary possessor; and if taken with intent to steal, the indictment may allege the horse to be the property of the person from whose possession it was taken.

2. THEFT—INTENT.—Evidence that the accused once rode for several days an estray horse in the neighborhood of its range, is not proof of a felonious taking.

3. OWNERSHIP—THEFT.—See facts held insufficient proof of ownership as alleged to sustain a conviction of theft.

APPEAL from Victoria.    Tried below before the Hon. T. C. Barden.

George Blackburn was indicted for theft of a black gelding, the property of Bernardo Esparza.    On his trial the State proved by Esparza that he resided in Goliad county; that defendant also resided there; that the residence of witness was about six miles from Coletto creek, and the residence of Blackburn was about four and a half miles from said creek, and about a mile and a half from witness' residence, and that said creek was the boundary line between the counties of Goliad and Victoria.    Witness knew the defendant.    The gelding named in the indictment was taken up by witness as an estray in Goliad county; that he had never estrayed the same according to law; had never taken any steps to estray the gelding; that it was taken up about one year before it was taken by defendant; that the gelding was in the range with witness' horses when taken up by Blackburn; witness never saw defendant in possession of the said black gelding.

Witness does not claim to be the owner of the gelding, and does not know the true owner.    The gelding was taken without witness' consent; the description of the gelding in the indictment is correct.    Witness missed the gelding on or about October 25, 1875.    That upon information received he went to Carlo's ranche and got the gelding and took it home; he rode it to court on Monday morning, and "has him in town now."    The animal ran with his horses about a year before he took it into his possession.    Witness then took it home and used it as his own horse for a period of

eight months, and up to the time of its disappearance. He rode the animal as he did his own; fed him and exercised the same acts of ownership over the animal as over his own horses. Everybody about the country saw him using the animal. It would come up to the house to be fed, and after eating would go back to the range; in fact, while he did not actually claim the title to the animal, he held it and used it as his own, and would not have delivered it to any other person than the true owner. Witness recovered the gelding in Victoria county by making oath before a justice of the peace. The gelding was in possession of Aguerra's wife, with whom it had been left by the officers, who made the arrest of Blackburn for aggravated assault.

Witness recovered the gelding about five days after it disappeared.

M. Murphy, for the State, testified that about the time named in the indictment witness saw defendant Blackburn at Carlo's ranche, in Victoria county; that said defendant then and there had in his possession a black gelding such as described in the indictment, which was shown to witness.

Ned O'Reiley, for the State, testified that about the time named in the indictment, and for several days thereafter, and before his arrest, witness saw defendant riding the gelding described in the indictment; that defendant was riding said horse in Victoria county, at Carlo's ranche, at the store of M. Murphy. Witness assisted in making the arrest of defendant, and that when arrested the defendant was riding the gelding described in the indictment. Witness has seen it since in the possession of Esparza; saw him riding the animal to court last Monday.

Upon this testimony the court, after giving the statutory definition of theft, instructed the jury as follows:

"That if the property be taken from the possession of any person holding such property in such a way as to be fraudulent, for the purpose of converting the property to the

use or benefit of the person taking, with intent to deprive the owner of the value of the same, such a taking would constitute a theft of the animal. The question whether the person having the property in possession held such possession lawfully is not material to enable the jury to determine the guilt or innocence of the person taking the property thus unlawfully.

"You are instructed that, if from the evidence you find that Esparza was in possession of the animal in question in this case, even though not claiming to hold him by virtue of actual ownership, still, having it in possession and exercising acts of ownership over it, as against this defendant or any other person except the real owner or his agents, the indictment may rightfully lay the ownership and possession in Esparza."

Defendant was found guilty, and his punishment fixed at five years in the penitentiary, and he appealed.

No brief for appellant came to the reporters.

*George Clark, Attorney General,* for the State.

ROBERTS, CHIEF JUSTICE.—This is a conviction for theft, in which two questions are raised upon the evidence and the charge of the court: first, as to the ownership of the gelding alleged to be the property of Bernardo Esparza; and, second, as to the fraudulent intent to appropriate the horse by the defendant.

Esparza occasionally used and fed the gelding as he did his own horses, which gelding had previously been running in the range with his horses as an estray. Blackburn, who lived one and a half miles from Esparza, both of whom reside in Goliad county, near the line of Victoria county, is seen riding the gelding at Murphy's store, at Carlo's ranche, in Victoria county, several days, when he was arrested for an aggravated assault, and the gelding being left there by the officers who arrested him; Esparza got him a few days after-

wards by making an oath before a justice of the peace. Esparza claimed to be in possession of the animal as an estray, but had taken no steps to post him as such. The gelding would come to his house to be fed, and after eating would go back to the range. For about eight months he had used him, and exercised acts of ownership over him as he did over his own horses. "Everybody about the country saw him using and riding the horse." It was not shown that all the rest of the neighbors besides Esparza and Blackburn did not use and ride this estray gelding when they wished, and let him go to the range again as Esparza did, and there was no evidence that Blackburn tried to swap or sell the gelding, or do otherwise with him than ride him as Esparza did, just as he did his own horses, if he had any; and if he had none his excuse for riding him was none the less cogent than that of Esparza, who had horses that he could have ridden without the necessity of riding one that he knew did not belong to him. It is not shown that Esparza had the animal in any inclosure when he was taken, or that he ever had, and it may be presumed that Blackburn took him from the range, unless the gelding came up to his house as he did to that of Esparza.

Thus it was shown that Esparza did not have either general or special property in the gelding, and it was not clearly shown that he had that sort of actual possession of or control over the animal, exclusive in its nature for the time, when the gelding was taken by Blackburn, which would enable him to maintain trespass for the taking of the gelding.

Mr. Bishop says, "It is a rule, rather technical than resting on any clear reason, that there can be no larceny without a trespass. The rule, however, is well established." (2 Bishop, 808, (703.) The taking by Blackburn might have been a trespass against the true owner of the estray, without being a trespass as against Esparza. If he had been indicted for stealing an estray gelding whose owner

was unknown, the proof as to the trespass against the owner would have been complete.

If a person has taken actual control, and is in the full possession of a horse, so as to be responsible to the true owner for the disposition of it, and the horse is taken out of his possession by one having no right or authority, it is a trespass as against the temporary possessor, and if taken with intent to steal, the indictment may allege the horse to be the property of the person from whose possession it was taken.

Hence it was held that when " a horse got loose from his owner, and was taken in the field of a third person and placed in his stable, from whence he was stolen," it might be alleged to be the property of such third person, who had the actual possession. (Whart. Am. Cr. Law, sec. 1830; Owen *v.* The State, 6 Humph., 330.)

Upon the same principle this court has decided that if a thief steals a horse from A, takes him to another county, sells him to B, and afterwards steals him from B, in a prosecution for the last theft the horse may properly be alleged to be the property of B, he being in the actual possession of the horse when last stolen by A. (King *v.* The State, 43 Tex., 352; Ward *v.* The People, 3 Hill, (N. Y.,) 393; 1 Hale, 537; Rosc. Cr. Ev., 633; Regina *v.* Smith, 9 Eng. Law and Eq., 532.)

Goods stolen from a laundress who has them in charge to wash them may be safely described as hers, because she is answerable for them to her employers. (3 Chit. Cr. Law, 947; 1 Leach Notes, 357.) So if a package be stolen from a coachman, the indictment may charge it to be his property. (Ib.) Not so, however, if property be stolen from the possession of a servant, because they have the custody without a special property, or without a responsibility that enables them to sue for it if it were a mere trespass. Now, whether the gelding ran in the range or was kept up, Esparza's use of and control of him must have been so frequent, constant,

and exclusive as to amount to an appropriation and conversion, so that if lost he would have been liable to the owner, in order to allege it to be his property. (Chit. Cr. Law, 947.)

The court should have charged the jury that to convict the defendant on this indictment, charging the gelding to be the property of Esparza, they should be satisfied from the evidence that the gelding was in the actual possession of Esparza, or under his continued and exclusive control, at the time it was taken, if he was neither the owner nor had control of it by the authority of the owner; but if the gelding was an estray, running in the range without such possession or control when taken by Blackburn, that would not satisfy the allegation that he was taken from the possession of and was the property of Esparza.

The charge of the court should further have submitted the question, under the evidence, to the jury, whether Blackburn took the horse to use him temporarily as an estray, or to make property of him by converting him to his own use as a permanent appropriation.

Had such issues been submitted to the jury as were prominently suggested by the evidence and by the want of evidence before the jury on the trial, they would hardly have found the defendant guilty of theft and sent him to the penitentiary for five years for riding a stray horse one time during several days that one of his neighbors had been taking the liberty of riding occasionally during eight months previously in open violation of law, (Paschal's Dig., art. 2441,) and which was confessed by the witness, Esparza, in open court.

We find no evidence in the record that made it reasonably certain that Esparza had such possession or exclusive continued control of the gelding, at the time he was taken possession of by Blackburn, as would justify the charge in the indictment that he was the owner of him, on the one hand; and on the other hand, it is not shown that Blackburn intended to make property of the gelding by convert-

ing him to his own use permanently, or that he intended otherwise appropriating him to his use than to ride him on that occasion as a temporary use of an estray animal running loose in the range in his neighborhood, which, though in violation of the law regulating the use of estrays, did not necessarily render him guilty of theft, as charged.

Therefore, because of the unsatisfactory character of the evidence on the trial, upon both of those points, and of the want of a charge of the court, submitting properly the issues to the jury, with reference to the evidence, there is error in the judgment, and it must be reversed and the cause remanded.

REVERSED AND REMANDED.