## Pilar Loza *v.* The State.

1. Practice.—Notwithstanding that in all cases the juries are the exclusive judges of the facts and of the weight of the testimony, yet, under the statutory provisions that a new trial will be granted when the verdict is contrary to the law and the evidence, and that the judgment in a criminal case may, on appeal, be revised on the facts as well as the law, the responsibility is imposed on the district court in the first instance, and on the appellate court afterwards, of determining the sufficiency of the evidence to support the conviction.

2. Theft—Intent.—A felonious intent is an essential ingredient of the crime of theft, and must exist at the time of the taking. It is usually evidenced by clandestine or covert action, or by concealment or denial; but these are not the only tests of the intent.

3. Same.—The felonious intent must be permanently to deprive the owner of the value of the property. An intent to trespass upon it, though wrongful, is not sufficient to make the taking a theft.

4. Same—Charge of the Court.—When the facts raised a question as to whether the intent of the taking was felonious, or only tortious, the court should have instructed the jury upon the distinction between theft and trespass.

5. Intent.—Drunkenness.—On his trial for theft the accused offered to prove that when he took the property he was so drunk as to be incapable of forming an intent to steal it. *Held,* that the proof was admissible for the purpose indicated, and it was error to exclude it on the score of irrelevancy.

6. Theft—Evidence.—Note the facts of this case *held* insufficient to sustain a conviction of theft of a horse, and which, if they constituted a felonious taking at all, made a case of robbery rather than theft.

Appeal from the District Court of Cameron. Tried below before the Hon. Edward Daugherty.

The material facts are clearly, though concisely, stated in the opinion.

*Powers & Maxan,* for the appellant.

*George McCormick,* Assistant Attorney General, for the State.

White, J. The appellant in this case was tried and

found guilty of the theft of a gelding, the property of one Juan Sarrate, and his punishment assessed at five years' imprisonment in the penitentiary. Concisely, but in substance, the evidence upon which he was convicted may be stated thus : About eight o'clock on Sunday morning one Nazario Rodrigues, a servant of the owner of the animal alleged to have been stolen, was riding the horse from the river, where he had taken him to water, and was passing along one of the public streets in the city of Brownsville. Defendant met him, and, drawing a pistol, told Rodrigues to get off the horse. Rodrigues did so, and then defendant mounted the horse and told defendant to get up behind him, which he also did, and both parties rode off in that manner upon the horse. Several parties saw them on the streets at different points. About ten o'clock Rodrigues complained to the chief of police of the city that the horse had been taken from him by defendant, and that officer went immediately to arrest defendant, whom he found on Washington street, drunk, standing at the door of a house, talking to a woman, and the horse was standing near by in the street.

This is in substance the extent to which the evidence went, as adduced at the trial. Now, however reprehensible this conduct was on the part of the defendant, we do not believe the evidence, as detailed, was sufficient to warrant a verdict and judgment of conviction for theft of the animal. Notwithstanding the statute provides that, during the trial in the lower court, " the jury in all cases are the exclusive judges of the facts proved, and of the weight to be given to the testimony" (Pasc. Dig., Art. 3108), still, under the rules that a new trial will be granted where " the verdict is contrary to the law and the evidence" (Pasc. Dig., Art. 3137), and that the supreme court may revise the judgment, in a criminal action, as well upon the law as upon the facts" (Pasc. Dig., Art. 3210), the responsibility is imposed upon

the district court in the first instance, and upon the appellate court afterwards, " of determining whether or not there has been adduced before the jury a sufficient amount of legal and competent evidence as would render it safe to allow the verdict to stand, and become a precedent in the adjudication of offenses under the law. The performance of this duty on the part of the court is the exercise of a legal discretion and judgment as to what facts should be sufficient to rebut the legal presumption of innocence, to which every one is entitled who is put upon his trial for an offense." *Tollett* v. *The State*, 44 Texas, 95.

Let us apply the leading settled principles of law, applicable to the crime of theft, to the facts as stated above. The felonious intent is the essential ingredient in the crime of theft, and this intent must exist at the time of the taking; for no subsequent felonious intention will render the previous taking felonious. *Billard* v. *The State*, 30 Texas, 367 ; *Dignowitty* v. *The State*, 17 Texas, 527. " A fraudulent taking of the property of another embraces the idea that the taker knew that it was not his own, and also that it was done to deprive the owner of it. This is usually evidenced by its being done in such a manner and under such circumstances as to avoid detection, or responsibility to the true owner." *Smith* v. *The State*, 42 Texas, 447.

Covert action and concealment are generally resorted to in theft, and evidence of this character is ordinarily important, though by no means the only test in determining the intentions of the accused. *Heber* v. *The State*, 7 Texas, 71 ; *Smith* v. *The State*, 42 Texas, 447. " It is not every wrongful taking that amounts to theft. One of the most material considerations respecting the taking, to constitute theft, is whether the act was done *animo furandi*. The ordinary discovery of such felonious intent is where the party commits the act clandestinely, or, upon its being laid to his charge, denies it. But this is not the only criterion. *Isaacs*

v. *The State*, 30 Texas, 450.  To constitute the crime of theft,. then, " the taking must be an actual and intended fraud upon the rights of another ; the taking must include the purpose and intent to defraud ; it must be an intentional taking,. without the consent of the owner, an intentional fraud, and. an intentional appropriation." *Mullins* v. *The State*, 36 Texas, 337.

And this intention must be permanently to deprive the owner of the value of the property, and to appropriate it to the use or benefit of the taker.  Chief Justice Roberts, in *Blackburn* v. *The State*, says : " On the other hand, it is not shown that Blackburn intended to make property of the gelding by converting him to his own use permanently, or that he intended otherwise appropriating him to his use than to. ride him on that occasion, as a temporary use of an estray running loose in the range in his neighborhood, which, though in violation of the laws regulating the use of estrays, did. not necessarily render him guilty of theft, as charged."  44 Texas, 457.   In the case of *Martin Rodrigues* v. *The State*, from Bexar county, decided by the supreme court, 30th of April, 1875, and which case has not been reported, and which was, also, a case of theft, Roberts, C. J., says : " Apart from this, the material question in the case was whether defendant took the clothing to keep them temporarily, as an annoyance to the owner, or to convert them to his own use, and deprive the owner of the property permanently. This was not sufficiently left to the jury by the charge of the. court."   Again : "If the taking, though wrongful, be not fraudulent, it is not theft, but only trespass.   The intent to trespass upon the property of another, though it enters into the constitution of theft, is not sufficient ; there must be added to it the further intent to deprive the owner of his property."  *Kay* v. *The State*, 40 Texas, 31.

It follows, necessarily, from the principles above enunciated, as was held by the supreme court in *Varas* v. *The State*,

that, if the intention was not criminal or fraudulent, the party could not be held guilty of theft.    41 Texas, 527.

Now, applying these rules of law to the facts of this case, as contained in the evidence above set out, this court is of opinion that the evidence was insufficient to warrant the conviction.    Under the facts, we are further of opinion that the court, in charging the law applicable to the case, should have instructed the jury as to the distinction between trespass and theft (*Isaacs* v. *The State*, 30 Texas, 450), and should also have submitted to the jury the question whether the defendant, Loza, took the horse to use him temporarily, or to make property of him by converting him to his own use as an appropriation.    *Blackburn* v. *The State*, 44 Texas, 463.

The court also erred in refusing to permit the witnesses to testify with regard to defendant's condition as to drunkenness—that is, the extent to which he was intoxicated. All the facts taken together rendered such an investigation peculiarly appropriate and necessary, in order that the jury should have been enabled to determine with correctness and certainty, as far as it was possible for them to do so, what was the intention of the defendant in taking the gelding. And if, upon the introduction of this testimony, the evidence developed that defendant was drunk, the court should further, upon that point, have submitted the question to the jury as to how far his drunkenness might deprive him of the power, at the time, to distinguish right from wrong. *Wenz* v. *The State*, decided by this court at the Austin term, 1876, *ante* p. 36.

The doctrine upon the subject of drunkenness, with reference to larceny or theft, is thus stated by Mr. Bishop in his work on Criminal Law.    He says: "We have seen that there are offenses which, from their peculiar nature, are committed only when the act is joined to the particular intent.    Here, manifestly, if, without the intent, one by

drink makes himself incapable of entertaining the intent,. and so does the act, but never, then or afterwards, yields it the sanction of his will, he does not commit the particular offense—one ingredient in which is wanting—whatever other criminal responsibility he may incur. Thus, a bare intentional trespass not being larceny, but the intent to steal being necessary also, if one who, too drunk to entertain this specific intent, takes property, relinquishing it before the intent could arise in his mind, there is no larceny. * * * The principle was well expressed by Reese, J.,. in the supreme court of Tennessee, thus : ' When the nature and essence of a crime are made by law to depend upon the peculiar state and condition of the criminal's mind at the time, and with reference to the act done, drunkenness, as. a matter of fact affecting such state and condition of the. mind, is a proper subject for consideration and inquiry by the jury. The question in such case is, what is the mental *status?*' " *Swan* v. *The State*, 4 Humph. 136 ; 1 Bishop on. Cr. Law, sec. 490. See, also, *Pigman* v. *The State*, 14. Ohio, 555.

" Intoxication is no excuse for crime where the offense consists merely in doing a criminal act, without regarding intention. But when the act done is innocent in itself, and criminal only when done with a corrupt or malicious motive,. a jury may, from intoxication, presume that there was a want. of criminal intention ; that the reasoning faculty, the power of discrimination between right and wrong, was lost in the excitement of the occasion." `1 Baldw. 514.

In *Ferrell* v. *The State*, though a case of murder, the general rule applicable to all cases of intent is stated by Moore,. J., in discussing the subject of drunkenness, as follows : " But in the class of offenses in which criminality depends. solely, or to a certain degree, upon the state or condition of the mind at the time the wrongful act is done, evidence of the state and condition of the mind, showing ability or

inability of the mind to form and entertain a sedate and ·ordinate criminal design, is certainly of most vital importance " (citing *People* v. *Eastwood,* and Bishop on Cr. Law), 43 Texas, 503.

The other grounds of error assigned in this case we do not think are well taken.

For the reasons above indicated, the case must be reversed. With a view, however, to any subsequent trial of the case, ⸱the attention of the county attorney is called to the fact ⸱that the evidence, if it could establish a case of guilt at all, would perhaps fix the crime as one of robbery, rather than ·of theft. See Pasc. Dig., Art. 2379. In this view, a new indictment for the former offense might be preferable to a ·second trial upon the present one.

The judgment of the lower court is reversed and the cause ⸱remanded.

*Reversed and remanded.*