## JONAH MOORE *v.* THE STATE.

1. THEFT OF ANIMALS. — The principle that domestic animals on their accustomed range are in the possession of their owner is a necessity in the jurisprudence of pastoral countries, and well established in that of this State; and our Code provides that possession is constituted by the actual control, care, or management of the property, whether lawful or not. By these principles, and their underlying policy, exceptions have in this State been engrafted on the general rule that an indictment for theft must allege the ownership in the true owner.

2. SAME — CASE STATED. — Indictment for the theft of a mare alleged the ownership and possession in one W. The proof showed that the mare, when stolen, was on her accustomed range, and that W. reasonably and in good faith claimed her as his property, and exercised actual control, care, and management of her; but that, previous to the trial, the mare was claimed by, and awarded to, another person. *Held*, in view of the provisions of the Code, and by analogy with former adjudications, that the ownership and possession were well alleged to be in W., and the conviction is sustained. See the opinion *in extenso.*

3. THEFT — RETURN OF THE STOLEN PROPERTY, to entitle the thief to the mitigation allowed by the Code, must be actual and indicative of penitence, and not clandestine or merely factitious.

APPEAL from the District Court of Caldwell. Tried below before the Hon. L. W. MOORE.

Wyatt, the alleged owner, testified that the mare, when stolen, was his property, having been raised by him, and stated various acts of control, care, and ownership, as well

as of actual possession, exercised by him. He had turned her out on the range, and she was taken therefrom without his consent. He admitted that Robert Elam subsequently claimed the mare, and that they submitted their claims to arbitrators, who awarded the mare to Elam. He said, however, that he never heard of Elam's claim to the mare until after the indictment was found; and in this he was contradicted by several witnesses for the defence, who stated that the arbitration was had some weeks prior to the date of the indictment.

There was a good deal of evidence on other matters not involved in the rulings. The defendant proved a very fine character for honesty, etc., in consideration of which the jury let him off with a term of five years in the penitentiary.

*Nix & Storey*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

CLARK, J. The appellant was indicted and convicted for the theft of a mare from one W. J. Wyatt, the alleged owner. It was developed upon the trial that subsequent to the taking, and, if the defendant's witnesses spoke truly, before the presentment of the indictment, one Elam claimed the mare as his property, and the respective claims of Wyatt and Elam having been submitted to arbitration, the property was awarded to Elam. At the time the animal was taken it was in the actual possession or custody of neither claimant, but was running loose upon its range, about seven miles equidistant from the residences of the claimants.

Upon this state of the evidence, the defendant's counsel sought by appropriate instructions to require the jury, in their determination of the issue, to be guided by the proposition contended for, to wit, that if Elam was the owner at the time of the taking, and the animal was not in the actual

custody of Wyatt, the alleged owner, but was running upon
its accustomed range, then Wyatt was neither such a general
or special owner as would suppport the allegation of own-
ership in the indictment, but his acts of ownership hitherto
exercised — such as taking up, caring for, and using the
animal for a few days at a time — constituted him simply a
trespasser against the true owner pending such acts, and
not an owner, general or special, within the purview of the
law ; and that if these facts were true, the ownership should
have been laid in Elam, and not in Wyatt.

The principle that an animal running at large upon its
accustomed range shall be deemed to be in the constructive
possession of its owner, is a necessary peculiarity incident
to an extensive grazing country like ours, and constitutes
at this day an established principle in this State.     *Deggs* v.
*The State*, 7 Texas Ct. App. 359.     The solution of many
questions likely to arise in practice by reason of the princi-
ple depends almost, if not entirely, upon our own statutes
and decisions, and the reasons underlying them, and but
little aid can be derived from any other system of laws.
As a general principle, it must unquestionably be assumed
as true that an animal upon its accustomed range is, in
legal contemplation, in the possession of its owner, and that
an indictment for theft of such animal must, in general,
allege the ownership in the true or actual owner.

But upon this general rule there are exceptions engrafted
by adjudication, and which authorize, under certain circum-
stances, a departure from the general rule in criminal plead-
ing.     When the owner is a non-resident, or an infant, or a
married woman, or because of any other circumstances by
which the property has been placed, either by act of law or
the parties, under the actual control, care, or management
of an agent, or guardian, or husband, — then, in that event,
the pleader has his election as to whether the property
shall be laid in the general or the special owner, without
subjecting the prosecution to variance.     *Turner* v. *The*

*State*, 7 Texas Ct. App. 596; *Trafton* v. *The State*, 5 Texas Ct. App. 480.

Our Code, in defining what is a necessary possession in theft, provides that "possession of the person so unlawfully deprived of property is constituted by the exercise of actual control, care, or management of the property, whether the same be lawful or not." Penal Code, art. 729. It is contended in argument that sufficient significance has not hitherto been given to the term "actual," as employed in this statute, by the decisions, and that it necessarily imports more than a range possession in the alleged owner. It is plain, however, that if this meaning had been intended, words clearly importing that idea would have been employed. It must be assumed that the law-makers understood the well-defined distinction between "custody" and "possession," and if actual possession was meant by "actual control, care, or management," the terms employed totally fail to convey that idea. A person in constructive possession of an animal upon the range — as an agent and the like — may exercise actual control, care, or management without even reducing the animal into actual possession, and, as we have seen, may thus constitute the owner within the meaning of the law. And so, it has been held, a party may constitute himself an owner, within the law of theft, by exercise of a *continued* and *exclusive* control over an estray, notwithstanding he had not complied with the laws regulating estrays, and the animal habitually ran upon the range. *Blackburn* v. *The State*, 44 Texas, 463. If such a principle is well established (and the case cited seems conclusive), it would be difficult to sustain a contrary rule when the control, care, and management of the animal are exercised by one under an honest claim of ownership, believing, and having good grounds for that belief, that the animal was in truth his property. The adoption of such a rule might often be productive of serious embarrassment in the administration of justice in this class of cases; and while this

consideration.does not usually enter into the decision of a case, yet when courts are called upon to adopt a rule of procedure hitherto unknown to the law, this consideration becomes of an important character.

Our conclusion is that if Wyatt claimed to be the owner of the animal, and at the time of its caption exercised control and management thereof, the ownership was properly laid in him, notwithstanding the animal was upon the range and was subsequently claimed by another, and the claim made good by adjudication in a mode known to the law. This the charge of the court submitted and the evidence abundantly established. There is no evidence in the record that Elam claimed the mare until after its caption, and a few weeks before indictment found.

The application for a continuance was properly overruled. The testimony of Elam, as set out in the application, could have had no appreciable effect upon the result of the trial; and sufficient diligence is not shown as to the two other witnesses, nor any probability of obtaining their attendance upon another trial, even though their testimony was material, of which there is a doubt.

To entitle a thief to the mitigated penalty for a voluntary return of the stolen property within a reasonable time (Penal Code, art. 738), the return must be actual, and demonstrating in itself a contrition for the act, and not a clandestine return and constructive redelivery of the property. The purpose of the statute is to extend the grace and favor of the law to such wrong-doers as promptly repent of their acts and endeavor to make all the reparation in their power to the party injured. In such cases the law looks with mercy upon the penitent, and administers a modified punishment for its infraction. But when the thief fails in his purpose to realize from the stolen property, and, as in this case, releases the stolen animal, which, of its own motions, returns to its accustomed range, the law delivers the prisoner over to Justice, who sits blindfolded and inexorable,

and sternly metes out the punishment affixed for the original transgression.

The judgment of the court below is affirmed.

*Affirmed.*