[No. 3255.]

## Charles Wilson v. The State.

1. BURGLARY WITH INTENT TO STEAL—CHARGE OF THE COURT—CASE STATED.—
In the trial of appellant for the burglary of the blacksmith shop of one B.,
with intent to steal certain property of his contained therein, the proof
showed the breaking and entry of the shop, and the taking therefrom of
B.'s brace. But there was further proof which tended strongly to show that
the brace was not taken with intent to appropriate it permanently to the
taker's use, but merely for the temporary purpose of using it as the means
of entering a store-house which was broken into and robbed the same night,
and near which the brace was found the next morning. The charge to the
jury did not submit the issue whether the brace was taken with the intent
to permanently appropriate it, or with the intent to make a mere temporary
use of it. No special instruction on the subject was requested, and no ex-
ception was taken to the charge given by the court; but the omission was
insisted on as cause for a new trial. *Held*, that the law pertinent to the
issue thus raised by the evidence was a necessary part of "the law applica-
ble to the case," and therefore it was incumbent upon the trial court,
whether so asked or not, to give the same in charge to the jury, and the
omission to do so is error.

2. THEFT—INTENT TO APPROPRIATE.—See the opinion *in extenso* for the col-
location of authorities, elementary and judicial, supporting the established
rule that the taking of property cannot be theft if done with the intent of
using it temporarily, and without intent to appropriate or convert it perma-
nently to the use of the taker.

APPEAL from the District Court of Comanche. Tried below be-
fore the Hon. W. A. Blackburn.

The conviction in this case was for the burglary of the blacksmith
shop of J. N. Broughton, in Comanche county, Texas, on the 27th
day of November, 1883. A term of five years in the penitentiary
was the punishment imposed.

J. N. Broughton was the first witness for the State. He testified
that he lived in the town of De Leon in Comanche county, Texas,
and was the proprietor of a blacksmith shop situated in that town.
Witness left his shop late on the evening of November 27, 1883,
having securely locked the door. When witness went up town next
morning he saw several parties collected about Brown's store. He
saw also that Brown's safe had been blown open. He saw that
Brown's store door had been prized open, and found about the place
a chisel which he identified as having come from his own shop, and
from the signs on Brown's door he, witness, was satisfied that the
chisel had been used in opening it. Witness then went to his shop
and found that it had been broken open. Witness found on the

dirt floor of his shop two different tracks, which were the same tracks that he saw about Brown's store. The smaller track went from about the witness's house to Brown's store. A piece was missing from the bottom of the shoe or boot which made this smaller track, and it left a peculiar impression in the sand. Witness found his tool chest broken open but missed nothing from it at first; but, as he turned to leave, he missed his brace from the chest. He then went back to Brown's store, where he found his brace lying near the house under a wagon. The brace and chisel were taken from the witness's shop without his knowledge or consent.

The tracks which the witness found in his shop on the morning after the burglary were the same tracks that he saw about Brown's store, near the door which was prized open. These same tracks were also found at the side of that store where an attempt had been made to force an entrance by breaking off a plank. A hole had been drilled above the combination lock of Brown's safe, and was filled with powder or some other combustible, and the safe blown open. The tracks described by the witness went directly from the witness's shop to Brown's store. Witness saw the defendant and another stranger in the town of De Leon late on the evening of the day on which the burglary was perpetrated at night, and again about three days later, when they were brought back under arrest. Both men were strangers in De Leon.

An agreed statement, signed by counsel for the State and the defense, embodies the following facts: It was proved that the store of Frank Brown, in De Leon, was broken open on the same night that Broughton's shop was burglarized; that his safe was blown open and about $200 in gold currency, silver dollars, and silver and nickel fractions taken therefrom; that the defendant and one Frank Cummings were recognized by two witnesses as being the two strangers who were seen in De Leon on the evening of the day on which the burglaries were committed at night; that there was no peculiarity about the track of the defendant, but that on the bottom of the boot that made the smaller track there was a break clear across that made a peculiar impression across the track; that these two tracks were found around Brown's store, leading from the shop of Broughton; that these tracks were also followed next day some fifteen miles; that on the morning after the burglaries, about an hour after sunrise, the defendant and the other man stopped for breakfast at the house of J. L. Jones, some fifteen or sixteen miles from De Leon, and said that they were from Dublin, and had been lost over night, and asked directions to the town of Ranger, a town

on the railroad in a different direction from Strong, in Palo Pinto county, and that at Jones's house the same peculiarity in the small track was noticed; that on the third day after the burglary two men were arrested at the town of Strong, in Palo Pinto county, and that the track of the man wearing the smaller boot showed an indentation similar to that noticed in the track about Brown's store; that the tracks were declared by several citizens of De Leon to be, in their opinion, the tracks of the same men who made the tracks in De Leon; that the two men attempted flight when approached by the officers at Strong, during which attempt the defendant fell twice, and was seen to throw a handkerchief under a bush, which was picked up and found to contain $40, and that while down the second time he was seen to be "fumbling" in his pockets; that the sum of $83, consisting of a twenty-dollar gold piece, a ten-dollar bill, and dollars, halves and quarters in silver, was found on the persons of the two men; that early the next day, within an area of thirty steps about the place of arrest at Strong, two drills were found, which, when applied to the holes drilled in Brown's safe, were found to fit with precision. One of the drills was found at one of the places where the defendant fell, and the other on the ground over which he had just passed.

The motion for new trial raised the questions discussed in the opinion.

No brief for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

White, Presiding Judge. On the motion for a new trial it was urg ently insisted that the verdict was contrary to the evidence. To illustrate this position a brief summary of the facts is necessary. Defendant was indicted for a burglarious breaking, in the night-time, of the blacksmith shop of one Broughton, with the fraudulent intent to steal certain corporeal personal property contained in said house, belonging to the said Broughton. It was shown by the evidence that the door of the blacksmith shop had been broken, and that the burglar after entry had broken open a chest in the shop and taken therefrom a brace. On the same night the storehouse of one Brown had been burglarized, his safe blown open, and several hundred dollars abstracted therefrom. So strong is the evidence that there can scarcely be a shadow of doubt but that defendant and another party broke into the blacksmith shop, took the brace, then went to Brown's store, entered that, broke open the safe and

stole the money. Near Brown's store, lying under a wagon, the next morning after the burglaries, Broughton found his brace which had been stolen from the blacksmith shop.

It is contended that this state of facts shows that, though defendant broke into the blacksmith shop and took the brace, he was not guilty of the theft of the brace, because his intention in taking it was not to appropriate it permanently, but only to use it temporarily in the breaking into the safe of Brown, and that, after he had accomplished that temporary purpose for which he had taken it, he had left or abandoned it where found.

In his charge to the jury the learned judge did not submit the issue to the jury as to whether or not the brace was taken from the blacksmith shop with a view to a permanent appropriation or a mere temporary use of it. No exception was taken to the charge as given, nor was any instruction specially requested of the court, and the point raised was not made until it was presented in the motion for a new trial. If the matter, however, was part of the law made necessary by the facts that it should be given, then and in such case the omission to charge upon that phase of the case would be reversible error, even though the charge was not excepted to nor special instructions upon the point requested; because in felony cases the charge must "distinctly set forth the law applicable to the case," "whether asked or not." (Code Crim. Proc., art. 677.)

What is the law? Mr. Wharton says "it should be remembered that every taking of the property of another without his knowledge or consent does not amount to larceny. To make it such it must be accompanied by circumstances which demonstrate a felonious intention to deprive the possessor *permanently* of the thing taken." (1 Whart. Crim. L. (8th ed.), § 883.) In *Johnson* v. *The State*, 36 Texas, 375, it was held that in order to constitute the crime of larceny the taking of the property must be with the felonious intent of *permanently* depriving the owner of his property, and the same doctrine was again held by our supreme court in *Blackburn* v. *The State*, 44 Texas, 457, and in *Rodrigues* v. *The State*, decided 30th April, 1875, and by this court in *Loza* v. *The State*, 1 Texas Ct. App., 488.

In *Rex* v. *Crump*, 2 Carrington & Payne (12 Eng. C. L.), 372, it was held that if a person stealing other property take a horse, not with intent to steal it, but only to get off more conveniently with the other property, such taking of the horse is not a felony.

In theft the taking must be with fraudulent intent; must be to "deprive the owner of the value of the same and appropriate it to the use or benefit of the person taking." (Penal Code, art. 745.) If the

intent to deprive the owner of it is wanting, the offense is not theft. Mr. Archbold defined a larcenous intent at common law thus: "Where a man knowingly takes and carries away the goods of another, without any claim or pretense of right, with intent *wholly to deprive* the owner of them, and to appropriate or convert them to his own use." And Chief Justice Eyre in Pear's case defined the offense thus: "The wrongful taking of goods with intent to spoil the owner of them *lucri causa.*" (*State* v. *Shermer*, 55 Mo., 83.)

Whether the taking was fraudulent or not depends in all cases upon the intent or the purpose with which the property was taken, and that intent is to be determined by the jury upon all the facts and circumstances of the case. Upon this point Mr. Archbold says: "In all cases of larceny the questions whether the defendant took the goods knowingly or by mistake; whether he took them *bona fide* under a claim of right or otherwise; and whether he took them with intent to return them to the owner, or to deprive the owner of them *altogether* and to appropriate or convert them to his own use, are questions entirely for the consideration of the jury, to be determined by them upon a view of the particular facts of the case." (2 Archb. Crim. Pr. & Pl. (8th ed.), p. 1184. See, also, *Hart* v. *The State*, 57 Ind., 102; *State* v. *Hawkins*, 8 Porter (Ala.), 461; *Phelps* v. *The People*, 55 Ill., 334; *State* v. *Scott*, 64 N. C., 586.)

In *Fields* v. *The State*, 6 Cold. (Tenn.), 524, it was held that to constitute larceny the taking must be without color of right and to deprive the owner permanently of his property. And in that case, which was for theft of certain tools pawned by defendant for whisky, it is said, "the court correctly stated to the jury that the taking must be done without the least color of right or excuse for the act, and with intent to deprive the owner not temporarily but permanently of his property."

In Blackburn's case, already cited above from 44 Texas, 457, Chief Justice Roberts says: "The charge of the court should further have submitted the question under the evidence to the jury whether Blackburn took the horse to use him temporarily as an estray, or to make property of him by converting him to his own use as a permanent appropriation."

In the case we have in hand it was an issue in the case, made by the facts proven, whether the taking of "the brace" from the blacksmith shop of Broughton was for a mere temporary use or for a permanent appropriation. It was in fact the only issue raised by the evidence. Defendant had the right to have it submitted to the jury for their determination, and it was not for the court to ignore

it in his charge. It may be said that its submission to the jury would not have affected the result in so plain a case. Perhaps so, but it is not for us to say or presume what might or might not have been the result of such a charge. We are not authorized to presume anything in favor of a charge in a felony case which does not "distinctly set forth the law applicable to the case." The last Legislature were asked to confer upon this court some authority, where in our opinion the rights of a defendant could not have been injured, in matters of error committed in the charge (See Attorney-General's Report, 1884, p. 19), and the Legislature declined to make any changes in the law as it is.

Because the charge of the court did not present the law applicable to the case, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

[Opinion delivered May 20, 1885.]