## JOHN SMITH v. THE STATE.

1. THEFT. A fraudulent taking of the property of another embraces the idea that the taker knew that it was not his own, and also that it was done to deprive the true owner of its value. Hence, a taking under a claim of ownership when the evidence shows reason to believe the claim well founded, will not authorize a conviction of theft.

2. THEFT—EVIDENCE. On the trial of one charged with theft of an animal, the jury was permitted by the court to leave the court-room during the trial, and inspect for themselves the animal alleged to have been stolen, with a view of thus solving, in connection with the evidence detailed by witnesses, the question of identity and ownership. No evidence was detailed by any of them on their return into court as to what they discovered. *Held,* 1st, That there is no authority in this State for such a mode of enlightening the minds of the jury as to the material facts of a case which they have to try. 2d, That a verdict upon facts thus ascertained would be a finding on facts known only to the jury—not publicly

developed on the trial—concerning which defendant had no opportunity to cross-examine them as witnesses, upon which defendant or his counsel had not been heard, and of which the judge had no information.

APPEAL from Gonzalez.    Tried below before the Hon. John P. White.

Indictment for hog-stealing.   The evidence seems, from an examination of the record, to have been about equally divided in regard to the true ownership of the hogs, there being quite as much evidence to establish ownership in Smith, the defendant, as in Houston, the alleged owner.   During the progress of the trial, on the suggestion of the District Attorney, the jury was taken in charge of an officer to " see and examine the " sow as part of the testimony in the cause."   On the return of the jury into the court-room, none of them appear to have been examined as to what they saw during their absence. Verdict guilty, and punishment assessed at one year in the penitentiary.

*Davidson & Atkinson*, for appellant.

*Geo. Clark, Attorney-General*, for the State.

ROBERTS, C. J.   In this case, John Smith was tried for and convicted of theft of a sow and six pigs, alleged to be the property of Robert A. Houston.   There was first a mistrial, because the jury could not agree, and by agreement, another trial was had at the same term, at which the jury found the defendant guilty, and assessed his punishment to confinement at hard labor in the penitentiary for one year.   The indictment is in good form, and the charge of the court was an excellent exposition of the law applicable to the facts of the case, of which neither party complains.   The evidence as to whether the hogs belonged to Houston, or to Smith, is conflicting, being, so far as we can judge, very well balanced.   Each party makes by the evidence a good case of ownership of the hogs, not by the

general opinions of the witnesses, but by the detail of parti-
cular facts and circumstances connected with them, and by
familiar acquaintance with, and positive recognition of them
by minute description, all extending continuously back to the
time that the sow was a little pig.   Her relationship even with
other hogs was fully attested and established, by witnesses in
favor of both sides.    There is but a slight effort to discredit
the witnesses in favor of Smith's title.    The strongest effort in
that direction is to show that Smith's wife was absent two or
three minutes from an interview, which she swore she was
present at, and heard all that was said; and the additional
fact, that Smith's very important witness was his attorney,
who defended him on the trial.    The general character of none
of them was attempted to be impeached.    Although minute
details are given, constituting reasons for a positive knowledge of
the identity of the sow during her whole life, by both sides, still
there is nothing very improbable or strange about it, unless it
be that both sides should be able to prove so intimate an ac-
quaintance with the sow and her history, as to make the most
positive proof of ownership for Houston on one side, and for
Smith on the other.

Had this been a civil suit, brought by Houston against
Smith to recover the sow and pigs, and the jury had found in
favor of either side, the verdict would have had ample evidence
to have sustained it, and it could hardly have been set aside,
because of the conflict or equal balance in the weight of the
evidence.    Had the verdict in such case been against Smith,
it would have established that he had committed a trespass by
*unlawfully* taking the property of Houston.

But to convict John Smith on this charge of theft, it should
have been shown, beyond a reasonable doubt, that Smith took
the hogs not only unlawfully, but also *fraudulently.*  He proved
most positively, by several witnesses, that they believed, and
believed that they knew that the sow and pigs were John
Smith's property.    Was it shown, with reasonable certainty,
that he did not believe, as his witnesses swore they did, that the

hogs were his property when he drove the sow up? If he believed that, he is not guilty, and the jury should not have con victed him.   A fraudulent taking of the property of another embraces the idea that the taker knew that it was not his own, and also that it was done to deprive the true owner of it.   This is usually evidenced by its being done in such manner, and under such circumstances, as to avoid detection, or responsibility to the true owner.   There was no evidence of concealment or covert action by Smith, tending to show that his taking of the hogs was with a fraudulent intent.   We fail to see anything in his conduct, as exhibited in the record, which should have satisfied the jury that he did not believe that the hogs were his property, as he claimed them to be, and, by his witnesses, positively proved them to be.

One fact relied on to show a fraudulent taking, was his readiness to deliver up the hogs to Houston.   There is conflict of evidence about that.   But suppose there was not, he may have had sufficient reason for his readiness to give them up by the visit of three men to his house on this business, one of whom had a gun.

Another fact relied on to establish the fraudulent taking was that the mark of the sow was altered, and that, from inspection, it appeared so.   This was also disputed by his witnesses, both as to the fact and as to his admission of it.   This seems to have been regarded as a very important fact.   If its truth had been in favor of Smith, and he had remained in possession of the sow up to the time of the trial, there might well have been some effort to ascertain whether this altered appearance in the ears of the sow might not have been produced by other means than that of a fresh marking of the ears.

In order, however, to turn the balance in this conflict of evidence as to the re-marking of the sow against Smith, Houston brought the sow to town, and after the matter had been thrown in doubt by the contradictory statements of the witnesses, the District Attorney proposed to have the jury leave the box, go to the place where the sow was put up, and inspect her ears, so

as to determine this doubtful question for themselves by a personal view. The defendant consented to this, which his counsel might have done, whether he thought it a proper proceeding, as part of this trial or not, so as to show that he was not afraid of any mode of trial, and because an objection might betray to the jury a want of confidence in their judgment and skill in ascertaining the fact for themselves, whether or not the ears of the sow had been re-marked, by the appearance then exhibited on a close personal inspection and view of them.

The court permitted this view to be taken, or inspection to be made, whatever the proceeding may be properly called.

How they performed this office, what fact they discovered, what conclusion they arrived at, and how far the personal knowledge of the fact in issue then acquired, if any, influenced their verdict, are not written in the record, and must necessarily be something wholly unknown in the trial of this case, both in the court below and in this court, as the sow was not brought into court, nor sent up here with the transcript of the record.

If, by this means, they or either of them did obtain a personal knowledge of a material fact in the cause before finding their verdict, and it was considered by them in finding their verdict, then they have acted upon a fact known to themselves, not developed publicly on the trial, as to how they understood it, concerning which defendant has had no opportunity to cross-examine them as witnesses, and upon which, being unknown, the defendant or his counsel have not been heard, and of which the judge trying the case had no information, either on the trial in giving his charge, or on the motion for a new trial. "

Our Code provides that " if any juror has knowledge of a " fact connected with the cause on trial, it is his duty to make " it known before the cause is finally submitted. Should he " fail to do this, he may come into court with the other jurors, " after their retirement, and shall be sworn as a witness, and " give his testimony." (Paschal's Digest, Article 3081.)

Sir William Blackstone states the rule as then and ever since in practice, " that if a juror knows anything, he may be

" sworn as a witness, and give his evidence publicly in court."
A searching cross-examination may show the juror himself, as
well as others, that he misconceived the fact, or that it was not
as he understood it. And if not that, the party to whom it is
unfavorable, when it is thus publicly brought into the trial,
may rebut it, or avoid its effect by other evidence, and his
counsel may be heard to discuss it.

The very object of introducing this rule in the English
courts was to prevent the jurors from acting, as they formerly
did, upon undisclosed facts within their own knowledge while
on the jury. (3 Black. Com., 374–5.)

Our Code of Criminal Procedure certainly contains no ex-
press provision for such a proceeding, as a means of giving in-
formation to the jury upon which they are justified in acting,
and the form of their oath, " a true verdict to render according
" to the law and evidence," would seem to exclude such a
mode, unless it be a species of evidence known to the common
law, and not prohibited by our statute law. Our Code says
that, " The rules of evidence known to the common law of
" England both in civil and criminal cases, shall govern in the
" trial of criminal actions in this State, except where they are
" in conflict with the provisions of this Code or of some statute
" of the State." (Paschal's Digest, Article 3103.)

At common law, inspection was a mode of trial by the court
(and not by the jury), of certain facts, such as that a person
was a minor, or alive, and the like, and of course had no refer-
ence to such a thing as this now under consideration. (3
Black. Com., 331 ; 6 Bacon, 631. " Trial.")

In a trial by a jury at common law, it is said, that evidence
is of two kinds, either that which is given in proof, or that
which the jury may receive by their own private knowledge.
(3 Black. Com., 367.) The latter kind is not permitted in
modern practice, except perhaps as derived from a " view " of
the premises in a suit about real estate, in order to ascertain its
identity and other circumstances. (3 Black. Com., 375. As
to " view," 3 Black. Com., 299–300.)

29

That has long since been prohibited by a statute in this State :

" All vouchers, views, essoigns, and also trials by wager of " battle, and wager of law, shall stand repealed." (Paschal's Digest, Article 1468.)

There is thus no authority found in this State for such a mode of enlightening the minds of the jury as to the material facts of a case which they have to try.

The fact of such a proposition being made indicates an opinion of a necessity for additional aid to the evidence already adduced, to relieve the case from the doubt and uncertainty in which it was involved by the conflicting evidence.

The ground of the motion for a new trial was, that the verdict of the jury is contrary to the law and evidence, as prescribed in the Code. (Paschal's Digest, Article 3137.)

The whole trial, as exhibited in the record here, except the charge of the judge, presents the appearance of a strongly contested case of the trial of the right of property, as between Houston and Smith, the true ownership of the property being left extremely doubtful by the evidence, rather than a trial between the State of Texas and John Smith on a charge of felonious theft, in which the fraudulent intent is the most important fact to be ascertained and fastened on Smith to a moral certainty.

We think there was a deficiency of evidence tending to show, beyond a reasonable doubt, that the taking of the hogs by Smith was fraudulent, so as to make it theft, and that the court erred in not granting a new trial on that ground.

Reversed and remanded.