## Louis Bouldin *v.* The State.

1. CHARGE OF THE COURT. — The rulings in *Harrison* v. *The State, ante*, p. 188, upon a charge instructing the jury as to the comparative cogency of circumstantial evidence and positive proof, referred to and approved.

2. MURDER. — In a trial for murder, it was error for the court below, without the defendant's consent, to allow the jury to take with them, on retiring

to consider of their verdict, a gun and some bullets spoken of in the testimony.

3. CIRCUMSTANTIAL EVIDENCE. — When the inculpatory evidence is wholly circumstantial, any fact, however inconclusive, which tends to cast light upon the issue, is competent evidence for the defence. For example: In a trial for an assassination, the principal inculpatory proof was that the defendant's shoe fitted a certain track, and that fresh horse-tracks led towards his house from the vicinity of the crime, which tracks, according to the theory of the prosecution, were those of the defendant and his horse. The defendant proposed but was not allowed to prove his willingness to put his foot and shoe in the track, and his request that the horse-tracks might be measured and compared with the feet and tracks of his horse. *Held*, that the proposed evidence was competent, and should not have been excluded.

APPEAL from the District Court of Gonzales. Tried below before the Hon. E. LEWIS.

The appellant was charged with the murder of one Jerry Lyons, on September 10, 1879, by shooting him with a gun. He was found guilty of murder in the first degree, and his punishment was assessed at confinement in the penitentiary for life.

The deceased was a laborer on the Harrisburg and San Antonio Railroad track, and while engaged in his work was shot from a thicket near the track, according to the sound of the report and other indications. Two or three other men were working close by, and heard the gun, but saw no one in the direction of the report.

The defendant was a negro, who lived about a mile and a half from the scene of the assassination. Seven or eight months previous to that event he had, according to his own statement, caught the deceased in adulterous intercourse with his wife, and consulted his former owner about his right to kill the deceased in retribution. But being advised not to do so, he acquiesced in the advice, and said he would not molest the deceased, but would quit his wife.

The deceased was killed with a single small ball, and the defendant had been seen early in the morning hunting with a small rifle. A party of men seeking traces of the assas-

sin found tracks in and near the thicket from which it was supposed the shot was fired, and near by found horse-tracks leading in the direction of the defendant's. They went to his cabin and called him, and he came out without shoes on his feet. Having arrested him and allowed him to put on his shoes, they took him to where they had found the tracks. One of the tracks was in a pile of ashes, and was the impress of a left shoe, slightly run down. They tried the left shoe of the defendant to this and several other tracks, and found it to fit. No comparison of the horse-tracks appears to have been made with the feet or tracks of his horse. Defendant denied that he had any arms, but when asked where the gun was with which he had been hunting, he said it was not his gun, but had been left with him by the owner, and was in the house. They got it, and found that it had recently been discharged. These were the facts relied on by the State to fasten the assassination on the appellant.

The testimony for the defence, elicited from several witnesses, made a strong *alibi*, if true ; and he proved a good character. The opinion discloses all other matters.

*Harwood & Winston*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

White, P. J.   The sixth subdivision of the charge of the court to the jury is almost, if not literally, a copy of the charge of the court with regard to the relative weight, character, and effect of circumstantial and positive proof, when compared together, which was delivered by the same presiding judge to the jury in the case of *Monroe Harrison* v. *The State*, decided at the present term, *ante*, p. 183.   In that case the charge was dissected and its inherent defects and errors were fully pointed out, both in so far as it was upon the weight of evidence and in so far as it was incorrect as an attempted enunciation of the principles of law

applicable to those two branches or classes of evidence. It is only necessary, on this branch of the case, to refer for its disposition to the opinion of Judge Clark in Harrison's case.

It was error for the court to permit the jury to take with them into their room, when they retired to consider of their findings, the rifle gun and balls which had been exhibited and testified about by the witnesses. As was said by the Supreme Court in the case of *Smith* v. *The State*, 42 Texas, 444, " If by this means they [the jury] or either of them did obtain a personal knowledge of a material fact in the cause before finding their verdict, and it was considered by them in finding their verdict, then they acted upon a fact known to themselves, not developed publicly on the trial as to how they understood it, concerning which defendant has had no opportunity to cross-examine them as witnesses, and upon which, being unknown, the defendant or his counsel have not been heard, and of which the judge trying the cause had no information, either on the trial, in giving his charges, or on the motion for a new trial."

We are further of opinion that the court erred, as shown by the third bill of exceptions, in not permitting defendant to prove, if he could, his willingness to try his shoe in the footprints found upon the ground, and supposed to have been made by the assassin, and also that he requested the parties having him under arrest to measure his horse's foot and apply the measure to the horse-tracks supposed to have been made by the animal ridden by the assassin to and from the place of killing. The evidence being wholly circumstantial, every fact and circumstance calculated to illuminate the transaction should have been permitted to go to and be weighed by the jury. There is no telling what effect the fact that defendant was willing to subject himself and horse to tests of actual measurement with the physical facts appearing from the tracks left upon the ground would have had upon a jury passing upon a case wholly of circumstantial evidence. If it was much or little, defendant was never-

theless entitled to have the jury to know, by the evidence, that when he was first brought to face the tracks of the murderer he did not shun contact or comparison with them, but, on the contrary, was anxious and insisted that the best tests that could have been made should then and there be made by those investigating the matter and holding him in custody as the perpetrator of the deed.

Because of the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*