### OTHO AINSWORTH *v.* THE STATE.

1. THEFT — CRIMINAL INTENT.— That the accused knew that the property taken was not his own, and that it was taken to deprive the true owner of it, is an essential element of the crime of theft; and one usually evidenced by a taking in such manner and under such circumstances as to avoid detection or responsibility. See evidence held insufficient to disclose a criminal intent.
2. CHARGE OF THE COURT instructed the jury that "the open and public manner in which property is taken and claimed will not, in any manner, lessen or excuse the offense, if the same was taken with guilty knowledge and fraudulent intent." *Held*, correct as an abstract proposition, but, in view of the evidence, negative in nature and effect, and calculated to mislead the jury.
3. SAME.— Whatever may be the defense interposed, it is the duty of the court to apply clearly, pertinently and affirmatively the law applicable to the facts tending to support it.
4. SAME.— In the absence of a fraudulent intent in the taking of the property of another, such taking constitutes a mere trespass upon property, and when the jury may infer from the evidence that the taking was not fraudulent, the accused is entitled to an instruction to the jury as to the distinction between trespass and theft.

APPEAL from the District Court of Eastland. Tried below before the Hon. B. R. WEBB, Special Judge.

The conviction in this case was for the theft of a certain red heifer, the property of J. P. Bateman. Two years in the penitentiary was the punishment assessed.

J. P. Bateman, the prosecuting witness, testifying for the State, stated in substance that he was the owner of the animal alleged to have been stolen.  He described the animal as a red heifer calf, with a white face and a red ring around one eye.  The animal was brought forth in the spring of 1880, and through that spring and summer was kept on the premises with its mother, which was used by the witness during that time as a milch cow.  During the fall it ran with other cattle belonging to the witness, on the range about witness's place, about two miles north from Merriman.  These cattle rarely ever mixed with other cattle, and during the latter part of the year 1880, and the early part of the year 1881, were seen by the witness nearly every day.  The animal in controversy, and the two other young ones which ran with the bunch spoken of, were neither marked nor branded.  In January, 1881, the Texas and Pacific railway killed some of the witness's cattle, which caused him to notice his stock closely.  On the 22d day of January, he was examining a cow recently killed by the railroad, and while doing so observed the bunch, including the stolen heifer, standing near.  A few days later he saw the bunch on the range, with the exception of the three young ones.  He instituted search for them, and in February, 1881, found the animal involved in this proceeding in Bedford's pasture, and in a herd belonging to J. S. Jerold, who told the witness that he had purchased the animal from the defendant and had his bill of sale therefor, and that the defendant had promised to bring him other yearlings.  The day after finding the animal the witness took possession of it under a search warrant and an affidavit of ownership proved by Isaac Greer.  The animal, when found, bore the mark and brand of Jerold, freshly made.  Said brand is C. A. L.  On reaching home with the heifer, it and its mother readily recognized each other.

The witness was positive that the animal he recovered

from Jerold was his. It was the only one he had ever driven from Jerold's herd in company with Greer, the constable, and Jerold. Of the three animals lost the witness had recovered the one in controversy from the herd of Jerold, and another from the herd of one Milby in Eastland county. The third he has never recovered. The indictment charged that the theft was committed on the 20th day of February, 1881.

The State introduced Isaac Greer, who stated in substance that he was well acquainted with the animal involved in this prosecution, and knew it to be Bateman's property. He remembered when it was missed, and was asked by Bateman, after it was found in Jerold's herd, to identify it, and did so. ' He had known the animal since it was a week old, and was positive that it belonged to Bateman.

The State next introduced an instrument in writing signed by the defendant and his attorney, wherein, to avoid a continuance by the State for the testimony of Jerold, the defendant admitted that Jerold would, if present, swear that defendant did sell to him, Jerold, the animal claimed subsequently by Bateman, which fact defendant admitted; and that Greer, Bateman, Simerll, the constable, and Jerold drove the animal from the herd, after it was found, to the town of Eastland.

Lev. Ainsworth testified for the defense that he was the uncle of the defendant, and lived on Leon creek, near the residence of the defendant. The defendant owned some cattle during the year 1880. During the summer and fall of that year the witness milked a cow that belonged to the defendant, which cow had at that time a red heifer calf with a white face, and, the witness believed, a red mark around one eye. Before turning the cow and calf over to the defendant, the witness marked it with a swallow-fork in the left ear. Ed Holloway drove the cow and calf from the witness's house to the

defendant's.   The witness had since seen the animal on the range, between Bateman's house and the town of Merriman.   It had been branded C. A. L. on the side.

Ed Holloway testified that, in the fall of the year 1880, he assisted the defendant in driving a cow and calf from Lev. Ainsworth's to defendant's residence.   The calf was a red heifer, with white face, unbranded, but marked with a swallow-fork in the left ear.   The witness had since seen the animal in the C. A. L. brand.

J. W. Hogue testified, for the defense, that he was present at defendant's house in February, 1781, when J. S. Jerold bought some cattle from defendant.   Among them was a red heifer calf with a white face, unbranded, but marked with a swallow-fork in the left ear, the offspring of one of defendant's cows, which witness had since bought.   The witness had since seen the same heifer in the C. A. L. brand.

*J. H. Davenport* and *G. P. Finlay*, for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

White, P. J.   Appellant was convicted of the theft of a red heifer, the property of one J. P. Bateman.   If, instead of a criminal prosecution for theft, the proceeding had been a civil action to determine the ownership of the animal, a verdict in favor of either party, prosecutor or defendant, in view of the statement of facts, could not have been set aside for want of evidence to support it, nor upon the ground that it was against the evidence,— so evenly balanced does the evidence appear from the record. There can scarcely be a question but that both parties owned a red, white-faced heifer, about the same age and almost precisely similar in appearance and flesh-marks, even to the red ring over one of its eyes.

Defendant's witnesses testify that his heifer had been

marked with a swallow-fork in one of its ears before he sold it to Jerold, and they swear moreover that the animal in question, claimed by the prosecutor and which Jerold after his purchase had marked and branded, was this identical animal. Bateman's heifer had never been marked. In this unsatisfactory state of the evidence, the testimony of Jerold would be and is very important, even if this was a civil suit, in settling the question as to whether or not the animal had a swallow-fork in its ear when he purchased and placed his own mark upon it.

Again, it is also manifest from the evidence that at the time the red heifer was stolen two other calves of Bateman's were also stolen, one of which was found by him in a herd of cattle in possession of Harry Milby, in Eastland county, about the same time the red heifer was found in Jerold's herd. Now, how did Milby acquire possession of this other calf? If from defendant, it would have been a strong if not overwhelming circumstance against defendant, especially if, in connection therewith, the State had shown by Jerold that the heifer he purchased was not marked with a swallow-fork. Neither Jerold, Milby, nor any other witness was put upon the stand to testify as to these matters.

Without this evidence or other and stronger evidence of the fraudulent intent of defendant than is exhibited, we do not think the conviction should stand. "A fraudulent taking of the property of another embraces the idea that the taker knew that it was not his own, and also that it was done to deprive the true owner of it. This is usually evidenced by its being done in such manner and under such circumstances as to avoid detection or responsibility to the true owner." *Smith* v. *State*, 42 Texas, 444. There was no concealment or covert action by Ainsworth tending to show that his taking of the animal was with fraudulent intent. For aught that appears, there is nothing in the record so far as his conduct is disclosed

which should have satisfied the jury that he did not believe the heifer was his property, as he claimed it to be and by his witnesses positively proved it to be.

In this connection the charge of the court to the jury was "that the open and public manner in which property is taken and claimed will not in any manner lessen or excuse the offense, if the same was taken with a guilty knowledge and fraudulent intent." Abstractly considered the charge is a correct enunciation of the law. But it is obnoxious in that it is negative in its nature and effect, and was calculated to be misconceived by if it did not in fact mislead the jury. "The rule applicable to all defenses, whether complete or otherwise, is that the court below must apply the law clearly, pertinently and *affirmatively* to the facts tending to support the defense." *Johnson* v. *State*, 43 Texas, 612; *McLaughlin* v. *State*, 10 Texas Ct. App. 340.

The charge is also liable to the objection that it did not sufficiently draw the distinction between trespass and theft,— a distinction demanded by the character of the evidence. "In theft the fraudulent intent is a necessary constituent of the offense. The act of taking without such intent is a mere trespass. If the taking be under an honest though mistaken claim of right, it would seem hardly necessary to cite authority that it is not theft. In cases where there is evidence from which the jury might infer that the taking was not fraudulent, it is the right of the defendant to have them clearly instructed as to the distinction between trespass and theft." *Bray* v. *State*, 41 Texas, 203; *Isaacs* v. *State*, 30 Texas, 451; *Neely* v. *State*, 8 Texas Ct. App. 64; *Landin* v. *State*, 10 Texas Ct. App. 63.

Because the evidence is insufficient, and for the errors in the charge of the court as indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*