[No. 3593.]

### CLINTON BOYD *v.* THE STATE.

HOG-THEFT — FACT CASE.— In a trial for theft of a hog the proof showed that the hog was taken openly and in the day-time, by the accused, in the presence of his neighbors and under claim of ownership; and, on the other hand, the proof failed to show that the accused knew the hog to be the property of the alleged owner.

APPEAL from the County Court of Robertson. Tried below before the Hon. J. E. Crawford, County Judge.

The conviction in this case was for the theft of a hog, the property of J. L. Sanson, in Robertson county, Texas, on the 25th day of November, 1884. A fine of $10 was the punishment inflicted on the appellant.

The State first introduced J. L. Sanson as a witness. He testified that he lived in the northeast corner of Robertson county, Texas. He owned, during the year 1884, a certain spotted sow known as the " Blackwell " sow. He missed this animal from her range in the " bottom " of the Navasota river, on or about November 25, 1884. He was afterwards informed that the said sow was killed on her range, by the defendant and one John Smith. The animal weighed from one hundred and forty to one hundred and forty-five pounds, and was worth about $10. Witness did not consent that any one should take or kill the said animal.

Witness was acquainted with the defendant, and knew the defendant's hogs, of which he owned, on the same range, perhaps some sixty or seventy head. Witness knew that the defendant owned short tailed, spotted, spayed sows that corresponded in description with the sow that the witness lost as to flesh marks, but differing in ear marks. Witness bought his animal from James M. Blackwell, and she was then in Blackwell's mark, which was a crop off and two splits in each ear. Witness's mark was a smooth crop off each ear; that of defendant an over half crop in each ear. After witness purchased the said sow he changed her mark to an over and under third crop in each ear.

G. W. Seal testified, for the State, that, about 2 o'clock P. M. on November 25, 1884, he saw the defendant and John Smith kill an animal known as the " Jim Blackwell sow," which at that time was the property of the prosecuting witness Sanson. They killed that sow in the Navasota river " bottom," near the mouth of Dog-wood creek. The defendant told Smith to shoot the sow,— that she belonged to

him, and Smith shot her. Witness's father's hogs frequented the same range as those of the defendant, and witness was familiar with defendant's hogs. John Smith kept hog-dogs, and by occupation was a hog-hunter for hire. Messrs. Baldwin, Blackwell, J. D. Seal and witness overtook the defendant and Smith about 2 o'clock P. M. on the day that the hog in controversy was killed by the parties last named. Smith had a Winchester rifle and his hog-dogs with him. He and defendant were then going from the direction of their homes towards the hog range in the Navasota river bottom. J. D. Seal also had a dog, and some of the witness's party had guns. Smith said that he and defendant were on their way to the bottom, hog hunting. Witness and his party replied that they, too, were on the same mission to the same place. Inasmuch as the dogs of Smith and J. D. Seal were violent when together, it was agreed that the parties would separate, Smith and defendant hunting above, and the witness's party below the road they were then traveling.

The parties had been separated but a short time when Smith's dogs gave tongue, and were almost instantly joined by J. D. Seal's dog. Witness hurried after the dog and arrived at the point where the dogs had brought some thirty or forty hogs to bay in a small thicket, in advance of his party. The defendant and Smith reached the thicket about the same time. The three parties, witness, defendant and Smith, stood in ten feet of each other. Within a few minutes all of the hogs save four or five left the thicket and fled. Smith then asked defendant if he, defendant, owned either of the hogs left in the thicket. After looking into the thicket at the hogs, some twenty or thirty steps distant, defendant said: " Yes, that one (pointing) is mine; shoot it, John." Witness did not say, before or after Smith shot that hog, that it was defendant's hog. If so, he did not remember it. Witness knew the Blackwell sow well. She ran with some of the witness's father's hogs, which the witness saw and fed, usually, two or three times a week. Witness did not know until after it was shot that the animal then killed by Smith was the Blackwell sow, though he was present and loaned the knife with which she was stuck after being shot down. She was not killed outright by the shot. Witness went up to her when the dogs caught her, but he did not recognize her as the Blackwell sow until she was dead. The others of witness's party arrived after the hog was shot, and about the time she was seized by the dogs.

The hog killed by Smith in the manner stated was a spotted, spayed, short tailed sow. Defendant owned black and white spotted, short tailed, spayed sows on that range, but the witness knew that

defendant was familiar with this animal because she was known to everybody in the neighborhood as the "Blackwell sow." Moreover, on one occasion, the witness having just thrown feed to a bunch of hogs, including the sow killed, the witness remarked to defendant, who had stopped and looked over them: "A fine lot of hogs;" to which he responded "Yes." He stopped but a few minutes, but witness knew that he must have seen the sow in question, though he said nothing about her. As soon as the sow was killed by Smith, defendant left Smith with it and returned to his and Smith's horses, which they had tied a short distance from the thicket. Smith and the defendant both knew of the witness's presence when the hog was killed, and knew that he was familiar with all the hogs on the range. They knew also that Seal's dog was present.

James M. Blackwell testified, for the State, that on November 25, 1884, he saw the defendant and John Smith stick and kill a black and white spotted, short tailed spayed sow, which, some time before, he, witness, had sold to J. L. Sanson. Just as witness got in sight he saw the dogs of Smith and Seal catch the hog. Smith tried to bleed her with a small pen knife, which failing to do, he borrowed Seal's knife, with which he stabbed and killed her. Defendant knew the witness well, and knew of witness's presence in the range on that afternoon. Witness, Baldwin and the Seal boys had separated from defendant and Smith not more than an hour before the sow was killed.

Cross-examined, the witness stated that he arrived on the scene just as the dogs caught the hog, and before she was killed. He saw the defendant get Seal's knife to stab the animal with. Witness was near by, and must have been seen by the defendant. The witness knew that the defendant knew that the sow was the "Blackwell sow" owned by Sanson, from the fact that, early in the fall, the witness had made inquiries of defendant about this same animal, telling him that he, witness, had traded her to Sanson, at which time the defendant said that he knew the animal. Witness did not think that Sanson had changed the hog's mark at the time of this conversation with defendant. Witness had, since that time, made frequent inquiries of the defendant concerning that animal, and defendant always told him that he knew the animal. Witness knew that defendant owned several hogs on the same range, but knew nothing of their flesh marks. Witness examined the sow in question after she was killed, and told Smith that she did not belong to the defendant, but to Sanson. The defendant was not then present, but had gone back to his and Smith's horses. Witness called the

attention of those present that the animal was the "Blackwell sow," which belonged to Sanson, and, acting upon witness's suggestion, some, if not all, of the party, returned to and examined the hog.

J. D. Seal, the next witness for the State, testified to substantially the same facts, and in substantially the same language used by the witness G. W. Seal.

John Smith was the first witness for the defense. Testifying that, on the day in question, he accompanied defendant by request, to hunt and kill a hog for him, the witness stated facts which harmonized with the testimony of the State's witnesses up to the time that the hogs were brought to bay in the thicket. Shortly after being joined by G. W. Seal and the Seals's dog, the larger number of the hogs — all in fact save five — left the thicket and fled. Witness asked defendant if any of the hogs remaining in the thicket belonged to him. He replied: "I don't know yet; let me see." He then peeped through the brush at the hogs, some thirty steps distant. When witness asked defendant if he owned either of the hogs, G. W. Seal said, pointing to the one afterwards killed: "Yes, there is one of Mr. Boyd's hogs." Defendant then said, "Yes, that is mine," and directed witness to shoot it. Witness did so, but did not kill it. He then made the dogs catch it, and about this time J. D. Seal, Blackwell and Baldwin arrived. Witness then attempted to bleed the hog with his small pen knife, but failed. Defendant then borrowed G. W. Seal's knife, stabbed and killed the hog. Defendant then left witness to watch the hog, and returned to the point where they had tied their horses, to get them. After the defendant had started for the horses, some one present said that the hog killed belonged to Sanson. Witness thereupon examined the animal, and found that it was not in defendant's exact mark. Nor yet was it in Sanson's mark.

When the defendant returned with the horses, witness told him what had been said about the hog belonging to Sanson. Defendant replied: "That is not Sanson's hog; it is mine; some one has changed the mark by putting those two hacks in its ears." Witness returned with the hog to the defendant's house, over the same road they had traveled in going to the hog range in the bottom, and cleaned the hog at the defendant's well, near the said public road; which road is as public as any road in the neighborhood, although it is not a county road. The animal killed was a white and black spotted, short tailed, spayed sow. The mark on the sow was upper half crop, and a slight hack ranging upwards in each ear.

Witness often saw the "Blackwell sow" before her mark was changed, but from the fact that there were a great many black and white spotted, short tailed, spayed sows running in that range, he did not know her by her flesh marks, and could not identify her as the one killed. Defendant had many among them. His mark was an over half crop in each ear, and he owned eighty odd hogs on that range at that time, and now owns over two hundred, old and young, in that brand. *En route* home with the hog, witness remarked to defendant that he did not doubt the honesty of his claim, nor that he owned the hog, but that, as he believed the parties would make trouble about it, he advised defendant to see Sanson and pay him for the hog. Defendant replied: "John Smith, this is my hog. I will not ask permission of Sanson or any one else to kill my own hogs, nor will I pay Sanson or any one else for my own hog." The defendant always claimed the hog as his property. Witness knew the "Blackwell sow," and knew that Sanson had bought her, but had never recognized her after her mark was changed.

Cross-examined, the witness stated that he had been tried on the charge of having stolen this hog, and was acquitted. He denied that he ever told J. D. Seal that he was going to get himself out of this scrape first, and then get defendant out. Defendant gave witness half the meat for his service in killing the hog; which was more than the service was worth, but defendant told witness to take it along, and help him kill other hogs in the future. He, however, had never since called upon witness for other service.

State's witnesses J. D. and G. W. Seal and J. L. Sanson, and defense witness Eli Morris, testified that the defendant's reputation for honesty in the community in which he lived was good, and that they had never before heard it impugned. The witness last mentioned stated that defendant's habits of industry were well known in the community.

J. D. Seal, in rebuttal, testified, for the State, that after the mistrial of Smith at the last March term, he heard Smith say twice that he was going to get out of this scrape first, and then get the defendant out.

The question discussed in the opinion was raised by the motion for new trial.

*T. J. Simmons*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

HURT, JUDGE. The conviction in this case was for the theft of a hog, the property of J. L. Sanson.

It is shown by the evidence in this case that the defendant took the hog openly in the day-time, in the presence of quite a number of his neighbors, under a claim of property, from his own hog range, upon which he had running at the time a large drove of hogs.

Under such a state of case, there not being the slightest circumstance tending to show that defendant knew that the hog was the property of Sanson when taken, the jury should have acquitted the defendant. (*Kay* v. *The State*, 40 Texas, 31; *Bray* v. *The State*, 41 Texas, 204; Id., 608; *Smith* v. *The State*, 42 Texas, 446; *Seymour* v. *The State*, 12 Texas Ct. App., 391; Id., 490; Id., 208; *Evans* v. *The State*, 15 Texas Ct. App., 36; 8 Texas Ct. App., 64; *Ainsworth* v. *The State*, 11 Texas Ct. App., 339.)

The verdict not being supported by the evidence, the court below should have granted the appellant a new trial. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered June 3, 1885.]